UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KEVIN NORRIS,<br>　　　Plaintiff<br><br>V.<br><br>GLORIANN MORONEY,<br>KEVIN DEVLIN,<br>FREDRICK RUSSELL,<br>SEAN O'DELL<br>BETH LIND,<br>FRANCIS BEDARD,<br>TINA HURLEY,<br>SHEILA DUPRE,<br>STACY BOOK,<br>KEVIN KEEFE,<br>ANGELO GOMEZ,<br>TIM SIMONS,<br>CHARLES WALSH,<br>PAMELA MURPHY,<br>　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT AND JURY DEMAND

### INTRODUCTION

This is a civil rights action for damages. The Plaintiff alleges that several parole officers of the Massachusetts parole board conspired together to deprive him of his civil rights, in retaliation for his grievance's against them, his lawsuit against the Massachusetts Parole board and several parole officer's, his challenge to his unconstitutional parole conditions, and due to his race (African-American). Plaintiff alleges the parole officers intentionally failed to inform him of his parole conditions, knowingly fabricated parole violations against him, and arrested him on these fabricated and false parole violations. Moreover, Plaintiff alleges, that, during his arrest, several parole officers used excessive force against him causing injuries, and several parole officers failed to intervene to prevent the unnecessary and unreasonable force.

Additionally, the preliminary hearing officer and Revocation hearing board members each relied on the fabricated and false parole violations allegations to revoke his parole. Furthermore, plaintiff was deprived the minimum Due Process Rights afforded by <u>Morrissey V. Brewer</u>, 408 U.S. 471, (1972), during the revocation process. As a direct and proximate result of the parole officer's egregious misconduct, the parole boards reliance on the false and fabricated allegations and the deprivation of due process, Plaintiff has been wrongfully imprisoned for a year.

## PARTIES

1. Plaintiff Kevin Norris ("NORRIS") is a resident of Worcester, Worcester County, Massachusetts.

2. Defendant Gloriann Moroney, is the current Chair of the Massachusetts Parole Board. Moroney is being sued in her official and personal capacity for conduct done under the color of law in the course of her employment as the Chair of the Massachusetts parole board.

3. Defendant Kevin Devlin, ("DEVLIN") was at all times a parole supervision employed by the Massachusetts parole board. Upon information and belief, Devlin, resides at 15 Sheldonville Road, North Attleboro, Massachusetts. Devlin is being sued in his personal capacity for conduct done under the color of law in the course of his employment as a sworn parole officer.

4. Defendant Fredrick Russell, ("RUSSELL") was at all times a parole officer employed by the Massachusetts parole Board. Russell is being sued in his personal capacity for conduct done under the color of law in the course of his employment as a sworn parole officer.

-2-

## PARTIES ADDENDUM

6. Defendant Beth Lind, ("LIND") was at all times a parole officer employed by the Massachusetts Parole Board. Lind, is being sued in her personal capacity for condut done under the color of law in the course of her employment as a sworn parole officer.

7. Defendant Francis Bedard, ("BEDARD") was at all a parole officer employed by the Massachusetts Parole Board. Bedard, is being sued in his personal capacity for conduct done under the color of law in the course of his employment as a sworn parole officer.

8. Defendant Tina Hurley, ("HURLEY") was at all times a parole Board Member employed by the Massachusetts Parole Board. Hurley, is being sued in her personal capacity for conduct done under the color of law in the course of her employment as a board member.

9. Defendant Sheila Dupre, ("DUPRE") was at all times a parole Board member employed by the Massachusetts Parole Board. Dupre, is being sued in her personal capacity for conduct done under the color of law in the course of her employment as a board member.

10. Defendant Stacy Book, ("BOOK") was at all times a parole compliance officer employed by the Massachusetts Parole Board. Book, is being sued in her personal capacity for conduct done under the color of law in the course of her employment as the compliance officer.

11. Defendant Kevin Keefe, ("KEEFE") was at all times the Executive Director, and former Chief of Field Supervision for the Massachusetts Parole Board. Keefe, is being sued in his personal capacity for conduct done under the color of the law in the course of his employment as the executive director and Field supervision chief.

12. Defendant Angelo Gomez, ("GOMEZ") was at all times the Deputy Chief of Field Supervision for the Massachusetts Parole Board. Gomez, is being sued in his personal capacity for conduct done under the color of law in the course his employment as the deputy chied of field supervision.

13. Defendant Tim Simons, ("SIMON") was at all times employed By the Massachusetts Parole Board as the chief of field Supervision. Simons, is being sued in his personal capacity for conduct done under the color of law in the course his employment as the chief of field supervision.

14. Defendant Charles Walsh, ("WALSH") was at all times employed by the Massachusetts parole Board as a legal counsel. Walsh, is being sued in his personal capacity for conduct done under the color of law in the course of his duty as a legal counsel for the Massachusetts Parole board.

15. Defendant Pamela Murphy, ("MURPHY") was at all times employed by the Massachusetts Parole Board as the General Counsel. Muphy, is being sued in her personal capacity for conduct done under the color of law in the course of her duty as General Counsel for the Massachusetts Parole Board.

5. Defendant Sean O'Dell, ("O'DELL") was at all times a parole officer employed by the Massachusetts Parole board. O'Dell, is being sued in his personal capacity for conduct done under the color of law in the course of his employment as a sworn parole officer.

## JURISDICTION

16. Norris brings this action pursuant to the Massachusetts Civil Rights Statute, Common Law Tort, the Massachusetts Declaration of Rights and under 42 U.S.C. 1983 for violations of rights under the First, Fourth and Fourteenth Amendment of the United States Constitution.

17. Title 28 U.S.C. section 1331 and 1334 provide federal question jurisdiction over the federal claims. Title 28 U.S.C. section 1367 provides supplemental jurisdiction over the state law claims.

## FACTS

18. In 1992, Norris was convicted of Two Counts of Armed robbery, three Counts of Aggravated rape, One count of assault battery by means of a dangerous weapon and one count of breaking and entering. Although Norris had no prior criminal record, and he was only eighteen years old at the time of his offenses, he was sentenced to several concurrent terms of twenty-five (25) to forty (40) years.

19. Norris appeared before the Board for the first time in 2007. He released on parole supervision in August 2018. He was arrested in June 2019 by Devlin, who alleged various violations of parole, including Norris, failed a polygrapgh, refused to participate in a polygraph, was taking expired medication, had possession of an unauthorized smartphone, and had submitted an altered medication sheet to parole officials. Moreover, during his arrest, Devlin, told him, "That the Parole board should never had let you out for raping that white girl."

-3-

20. After a final revocation hearing on July 24, 2019, Hurley and two other members voted to revoke Norris's p arole on only one charge, e.g., possession of an unauthorize smartphone, and upon information and belief reparole was denied due to the Supervision report submitted by Devlin.

21. In July of 2020, Norris was granted parole again. The conditions of Norris parole included, among other things, GPS monitoring for ninety (90) days and polygrapgh examination at the discretion of the parole officer.

22. After the Board granted Norris parole, Devlin petitioned the Board to rescind it. His petition to rescind Norris's parole was denied.

23. Devlin then filed a petition with the Board requesting increased conditions for Norris's parole supervision. In response, the Board required Norris to wear the GPS monitoring device indefinitely and mandatory participation in polygraph examinations.

24. At the time of Devlin's petitions he didn't petition the Board based on new information, information showing a change in circumstances, and/or information showing Norris had an increase risk to re-offend.

25. Upon information and belief, Devlin instructed victim service coordinator Julie Devlin, to contact Norris's wife, Ria Guerra-Norris, and talk her out of having Norris move back into her home.

26. Ms. Devlin, informed Mrs. Guerra-Norris, "Devlin wants to know are you sure, you want Kevin back, we thought you guys were divorcing, just tell us and we can stop his parole to your house right now."

-4-

27. In August 2020, Mrs. Guerra-Norris signed a home sponsorship agreement with the Board, and she with assistant Parole Supervisor Lind, and Russell to discuss the conditions of Norris's parole.

28. The Board ultimately approved Norris's parole plan.

29. Prior to his release, Norris met with Institutional Parole officer Gary Nevins, at the Massachusetts treatment Center to discuss the conditions of his parole.

30. Norris was released from incarceration and onto parole on August 31, 2020.

31. Shortly after his release, Norris met with Lind at the Region 4 Parole Board Office in Worcester, Massachusetts. Lind informed Norris that he was going to be supervised under the Sex Offender Condition Policy. During their discussion, Lind required him to place his intials next to each condition showing he acknownleged and understood it. Moreover, Lind, informed him that he was prohibited from viewing pornographic material, e.g., movies. She did not, however, inform Norris that he was prohibited from deleting text messages from his cell phone.

32. Norris was subject to general conditions of parole along with an additional set of "Sex Offender Conditions" deemed appropriate for "Offenders classified as Level 1 by the Sex Offender Registry Board" (Colloquially referred to as "SEX A" conditions).

33. The General parole conditions included, among other things: (1) Participation in a sex offender treatment program; (2) Develop and abide by a relapse Prevention Plan; (3) Submit to Polygraph examination; (4) No contact with victim or victim's

-5-

family; (5) No use of internet without permission of his supervising officer and he must submit to an examination and search of his computer, phone, tablet, or other device to verify that it is not used in violation of your supervision and treatment plans; (6) No viewing pornography or entering adult entertainment establishments; (7) No permission of restraining devices or equipment; (8) No possession of cameras or recording devices; (9) GPS Monitoring.

34. The general parole conditions included, among other things: (1) Electronic GPS Monitoring; (2) Polygraph testing; (3) Marriage Counseling; (4) Drug and Alcohol abstinence and testing; (5) curfew from 10:00 p.m. to 6:00 a.m.; (6) Mental health conseling and prescribed medication.

35. On or about September 4, 2020, Norris met with Russell and Lind at the region 4 office. Once again he went over the parole sex offender conditions. Lind had him again sign and intial each condition.

36. After the conference with them, Norris met one-on-one with Russell. Russell, told him he wanted to see him at least four (4) times a month. Norris inquired why the increase in meetings, and Russell replied it was his supervisors call.

37. During a home visit on September 18, 2020, Russell alleged that Norris admitted to playing video games online, and that this was prohibited. Norris informed him that he's had a microsoft online account since 2018, and both his former parole officers, Francis Bedard and Lydia Iraola, were aware of his online game playing, and had approved it. They advised, him, that he was prohibited from using the console to search the internet.

38. Moreover, Norris, told him that his Wife, and brother-in-law disabled the function on the XBOX console.

39. Upon information and belief, Russell did not confirm the prior approval with parole officers Iraola and Bedard.

40. On or about September 29, 2020, Norris was notified that he would be receiving a "warning ticket" for plainying online games on the internet.

41. Mrs. Guerra-Norris, informed Russell that the function on the XBOX had been disabled, and password protected.

42. On September 30, 2020 Norris requested access to a computer for school. Norris, informed Russell, that he was accepted back into the Ironworkers union, and Apprenticeship program and would need the computer for school.

43. On October 1, 2020, Russell requested Norris, come to the region 4 office for a conference with him and Lind. During this conference, he was advised that if he wanted to use a computer for school ne needed to write the parole board for permission. Norris, informed them, that, he was not doing this because his past requests for access caused backlash and he inquired why this was necessary since there's no rule or policy that requires this.

44. Russell, informed both Norris and Mrs. Guerra-Norris, that as long as the XBOX doesn't connect to the internet, he could play online.

45. In early October 2020, Norris started a new union job. During the hiring process he was informed that he mus watch a safety and orientation video via a smartphone , since he needed to scan the QR Scan code. Since he didn't posse a smartphone he requested permission to watch the video at home. The supervisor told him, that, he must complete it by tommorow, or you could lose the job.

-7-

46. Norris immediately contacted Russell, via texting him and calling him, to request permission and access to the internet.

47. Additionally, Mrs. Guerra-Norris, contacted Russell, and after also not reaching him, she spoke with his former Parole officer Bedard. Bedard, informed her, that he would have Russell, contact them.

48. Despite their numerous texts and calls, Russell, never contacted them.

49. Due to the urgency of the matter,Mrs. Guerra-Norris, scanned the worksheet document on her tablet, and allowed Norris, to watch the vidoe, in front of her and her mother Margret Alleyne. After the vidoe was done, Mrs. Guerra-Norris, submitted the code provided to confirm that he watched the video. At no time did Norris, ever touch the tablet.

50. Russell, did not contact him until the next day in the afternoon, and Norris informed him why he was texting and calling, and that he watched the Orientation video. Russell, informed him that, he would be receiving another warning ticket for accessing the internet.

51. Russell, sanctioned Norris, on October 9, 2020, saying in Norris's case notes, that, he had admitted to "using his home sponsors tablet the night before to complete employment forms."

52. Mrs. Guerra-Norris, his mother-in-law and sister Nicole Norris, all complained to Moroney and other parole officials regarding the situation and the punishment.

-8-

53. Mrs. Guerra-Norris, email definitely stated, that, Norris, didn't touch the tablet, he was supervised at all times, and that provided access to watch an orientation video.

54. Despite, the email's contradicting the version of Russell, he and other parole officials failed to rescind the **warning ticket**.

55. Russell, contacted Norris by telephone, informing him, that, the Board voted to allow him to use a computer if he installed a monitoring service called **RemoteCom**, for work purposes only.

56. During a meeting with Russell, requested access to the internet/Computer, for legal rearch, to prepare his legal documents, religious purposes, sex offender, mental health and marriage counseling, and to the pandemic. Russell, told Norris, you cannot use the internet unless the board says so.

57. Furthermore, Norris, informed Russell, that his sex offender therapist David Lambert, wanted him to participate via counseling via the Computer, that way he could effectively participate in treatment, and that he wanted to discuss with him his internet restrictions, since he disagreed with them, due to Norris being a graduate of the SOTP, being a level 1, and committing an offense as an adolescent, that **did not involve the internet**.

58. Upon information and belief, Russell never spoke to Therapist Lambert.

---

1) The **language** in the board's "Sex offender Condition Policy", 120 Par. 360, clearly states "You will not use the internet without permission of your supervising parole officer." There's no language that states internet/computer access must be first be granted by the parole board.

59. Norris filed a grievance against Devlin and Russell, in October of 2020. The grievance was forwarded to Defendant's Moroney, Keefe, Murphy, Simons, and Gomez.

60. The grievance was filed pursuant to the Parole Board's internal policy, e.g., "Supervision manual for parolees".

61. The Grievance alleged a pattern of arbitrary treatment, racial discrimination, fabrication of alleged parole violations, punishment for behavior he didn't do, and a conspiracy to harm him and revoke his parole.

62. Additionally, Norris, complained about the internet restrictions, Devlins attempts to rescind his parole, the GPS monitoring device, Devlins racial comments, etc.

63. The grievance was denied by Keefe and Gomez.

64. The investigation conducted by Gomez and Keefe, were inept and ingeniune due to their failure to conduct a fair and adequate investigation.

65. The Defendant's failed to interview Norris, Mrs. Guerra-Norris, therapist Lambert, and/or his former parole officers Bedard and Iraola.

66. Furthermore, in an attempt to cover-up Devlin's malfeasance, Gomez, and Keefedeclared, that, his actions were in accordance with parole board policy, that the language in the board's Sex Offender condition was mandatory, and that Devlins petition to rescind Norris's parole was based on new information.

_____

2) The Massachusetts Appeals Court ruled in <u>Doe V. Massachusetts Parole Board</u>, 82 Mass. App. Ct. 851 (2012), the language in the "Sex offender Condition Policy" was (not) mandatory, but a giudeline.

67. Further proof of an attempt to cover-up the bias and arbitrary treatment of Devlin, comes by way of the fact, that, Norris has repeatedly requested access to the petition to rescind his parole filed by Devlin, via letters to Defendant's Murphy, Walsh, Keefe, Gomez, Moroney and Book. The requests have been ignored.

68. Norris requested access to the petition to increase his parole conditions filed by Devlin, and was given access.

69. In late October of 2020, Norris, telephoned Keefe, regarding his problems with Russell, and Devlin. Norris complained about the internet restrictions, his fears of retaliation and denial of access to a computer for legal research, and Sex offender and mental health counseling.

70. Keefe, stated, he should be allowed access to a computer for these things, and he doesn't know why they keep going to the board regarding your access, when it's not policy, but he will check into things, and that hopefully things will cool down with time. Norris requested Keefe, remove Devlin, and Russell, from his supervision.

71. Norris also submitted a new grievance requesting the removal of Russell and Devlin. Norris never received a response to his grievance.

72. Despite, the verbal and written requests from Norris, and the **foreseeble risk of harm** to him, Defendant's Moroney, Keefe, Simons, and Gomez, didn't remove/replace Russell and Devlin, from participating in his Supervision.

73. Norris wrote Moroney and Murphy concerning his concerns about the installation of Remotecom. Norris, was gravely

-11-

concerned with his privacy rights. He never received a
response regarding his correspondence.

74. In December of 2020, Devlin, submitted a letter to the
sex offender registry board, stating that **Remotecom**, was
only to monitor Norris's **Browsing history.**

75. Additionally, in December of 2020, Norris filed a motion
in Worcester Superior Court regarding his lack of access to the
internet. See <u>Kevin Norris V. Massachusetts parole Bd.</u>, C.A. No.
2085CV01871. Norris, complained that the internet restrictions,
e.g., prohibition from using the internet for banking, counseling,
legal research, religious purposes, participation in society
due to the pandemic, etc. was harming him and his rehabilitation
and reintegregation back into society.

76. In January of 2021, the Parole Board responded to his motion,
informing the Court, that, it was going to be modifying his
parole conditions to allow him access to the internet for limited
purposes, including work, counseling, banking, legal research,
and religious purposes.

77. Norris, complained to the Cort about potential privacy
issues, e.g., his private communications with his attorney's.
Wife, sex offender and mental health therapist, Court documents,
etc. The Parole Board, responded by informing the Court, that,
**RemoteCom**, was only to monitor his internet browsing history.

78. Upon information and belief, the parole board voted in
February of 2021, to modify his parole conditions, to allow
access to the internet for work, counseling, banking, legal
research, and religious purposes, based on a new petition filed
by Devlin.

79. Additionally, in late February of 2021, Norris informed Russell, that he was starting a new work assignment that required him to submit daily COVID-19 screenings to his employer via smartphone.

80. In early March of 2021, Russell, telephoned Norris, regarding the request for a a Smartphone. He informed him, the parole board had midified his conditions, he could obtain a smartphone for several purposes, as long as he installed Remotecom.

81. In addition, during this call, Norris, inquired whether his communications, with his attorney's, wife, counselors, and Courts be monitored and what are the costs. Russell, stated he doesn't know anything about costs, but he believes "RemoteCom" will only be monitoring his internet browsing history, but he would check into it.

82. Norris and his wife, both contacted RemoteCom, attempting to learn more about its services. Norris was informed by a RemoteCom, employee, that he should speak to his parole officer, about what will be monitored and their services.

83. Norris was not served proper and adequate notice of the **New and midified** parole conditions. Defendant's Russell, Lind and Devlin, failed to provide a copy of the Board's new decision, and the new conditions in writing.

84. The Defendant's had a duty pursuant to the Fourteenth Amendment of the United States Constitution, and a statutory and regulatory duty to adequately inform Norris.

    a) Pursuant to 120 CMR 300.07(1), "where parole board members determine that release on parole is appropriate, the Parole board **Shall** impose standard conditions of parole that every parolee **Must agree** to **writing** as part of the parole permit signed before release into the community."

b) 120 Par. 359, provides the "parole board **Shall provide** each parolee with written information about obeying each condition of parole. Also the parole Board should maintain signed copies of the documents in question to verify that parolees have received and agreed to the parole conditions.

c) Pursuant to Mass.Gen.L. Ch. 127, section 131, notification was required in writing, "The Parole Board **Shall provide** written notification to a parolee his/her release conditions."

85) Due to the assurances of the Parole Board, Russell, and Devlin, that RemoteCom, was only to be installed to monitor his "Internet browsing history" he informed Russell, that he would install Remotecom.

86. According to its website, Remotecom is a company that maintains an electronic application to monitor internet activity on computers, smartphones and tablets for individuals subject to probation and/ or parole conditions that have restricted internet use.

87. Upon information and belief Remotecom was created to monitor individuals who committed crimes via the internet.

88. According to published documents RemoteCom provides the following services:

* Can notify the offender's supervising officer within 24 hours of observing any criminal or probation violation;

* Can submit a weekly report with the specified detail to the Offender's supervising officer. The Software allows the supervising officer to run reports at any time for any date range using any of their filters listed;

---

3) See <u>Hashimi V. Kali</u>, 388 Mass. 607, 609 (1983)("The word Shall is ordinarily interpreted as having a mandatory or imperative operation"); <u>United States V. Gallo</u>, 20 F. 3d 7 (1st Cir. 1994) ("Fair warning integral part of due process"); <u>Commonwealth V. Harding</u>, 488 Mass. 843 (2020)("SJC Vacates violation of probation due to the failure to provide **fair notice**)

* Remotecom keyword alert system triggers an instant
  alert if a specific word is typed, or viewed in plain
  text on the computer screen, this includes any words
  that are found on websites;

* Supervising officers can place filters and customized
  blocks for each individual;

* The Supervising officer provides the offender with the
  Remotecom installation handout prior to referring the
  offender for installation;

89. Russell, did not provide Norris the "RemoteCom" probation/
parole handout.

90. Additionally, Defendant's Lind, Devlin, and Russell, failed
to Summons Norris to the region 4 office to discuss his new
parole conditions, and they also failed to meet with his home
sponsor ("Mrs. Guerra-Norris"), to discuss his new conditions
as required by the Supervision manual policy.

91. On March 4, 2021, Norris contacted Russell, via text message
regarding access to music.

**From Norris:** "I got my paystubs and I wanted to know if I
can please listen to music on the phone"

**From Russell:** "What exactly do you mean. Is it a radio
station or an App like spotify or Youtube"

**From Norris:** "Youtube or Spotify"

**From Russell:** "Let's make sure the Remotecom is installed
and working properly and then we can reevaluate"

**From Norris:** "OK I Need music in my like"

-15-

92. On March 9, 2021, Russell, called Norris, he informed Norris, that he could install/Use Youtube, But to remember "Remotecom" is monitoring. Additionally, that RemoteCom would only be monitoring his internet browsing history.

93. At no time did Russell, inform Norris, that he was prohibited listening any type of music.

94. On March 31, 2021, Norris's lawyer, Attorney Adela Aprodu, filed a petition for Reconsideration with the Board. The petition requested the removal of the RemoteCom monitoring on his smartphone, the removal of certain internet restrictions, GPS Monitoring, marriage counseling and polygraph examination.

95. On April 12, 2021, at around 11:04 a.m., Norris, thought he unintentionally accessed a website of a sexual nature by clicking a link contained in a "spam" text message.

96. Norris immediately called his other lawyer, Attorney Eric Tennen, at 11:05 a.m.

97. Later that day, Norris showed the text message to Mrs. Guerra-Norris, and she suggested he show it Russell.

98. Norris did not delete the subject text message and left it intact with the intention of showing it to Russell at his next office visit.

99. On April 14, 2021, Russell called Norris while he was at work and told him to come to the office after work.

100. Later that day, at around 4:30 p.m. Norris arrived at the region 4 office. Once he arrived at the office, he was ordered by Russell, to go to the conference room.

101. Just before arriving at the conference room Norris was aggressively assaulted by Russell, and grabbed without warning. Russell, grabbed Norris from behind and pinned his arms above his shoulders.

102. Russell did not say anything to Norris.

103. Because of the agressive and unexpected nature of Russell's actions, Norris tensed up and had a panic attack. Norris has a documented history of anxiety disorder and post-traumatic stress disorder. Moreover, feared for his safety due to his grievance against Russell and Devlin, and his lawsuit against Devlin.

104. Two additional parole officers, Sean O'Dell and Francis Bedard, appeared from another office and also aggressively grabbed onto him. This exacerbated Norris's panic attack.

105. Defendant O'dell, punched Norris, in his stomach, and Defendant Bedard notified him that he was under arrest.

106. Norris was trying to fall to the ground because he was experiencing difficulty breathing, but the officer's were aggressively pulling him.

107. While in a prone position on the ground O'Dell tightly placed handcuffs on him. O'Dell was acting so aggressively and out of control that Bedard intervened and told him to calm down.

108. Norris asked for his asthma inhaler and anxiety medication.

109. They were not provided.

110. Norris continued to have trouble breath and was taken to

-17-

UMASS Memorial Hospital by Ambulance where he was treated for anxiety and chest pain associated with the panic attack, lower neck soreness and arm soreness.

111. Norris continued to suffer lower neck soreness, arm soreness, and bruises on his wrists. His injuries were shown to Attorney's Tennen and Aprodu.

112. Defendant Russell submitted a parole violation report on April 16, 2021. The report alleged the following technical violations:

    a. "RULE #1A: IRRESPONSIBLE CONDUCT: Your conduct on 4/14/2021 with respect to you resisting arrest by Massachusetts Parole Board for parole violations and causing them injuries";

    b. "RULE #8A: SPECIAL CONDITIONS: Your unauthorized use of the internet as shown by your smartphone which was monitored by REmoteCom";

    c. "RULE #1B: IRRESPONSIBLE CONDUCT: Your conduct on 4/14/2021 in which you arrived at the Region 4 parole Office with your smartphone fingerprint protected, preventing the phone from being searched as stated in the Massachusetts parole Board SEX A condition's";

    d. "RULE #1C: IRRESPONSIBLE CONDUCT: Your use of the third party application or deleting of text messages on your smartphone per RemoteCom employee's. This action by you appears to be an attempt to not allow your parole officer to properly supervise you";

    e. "RULE #1D: IRRESPONSIBLE CONDUCT: Your conduct on or about 3/8/2021 in regards to you using the internet to play XBOX live. Your behavior on the internet led to an enforcement action taken against you by XBOX due to violations of the Microsoft service agreement";

f. "RULE #1E: IRRESPONSIBLE CONDUCT: Your conduct on 4/12/2021 at approximately 11:04 AM in which you appeared to be looking at nude photos of young women on your smartphone. This is a violation of your SEX A and parole Conditions";

g. "RULE #1F: IRRESPONSIBLE CONDUCT: Your conduct from 3/5/2021 to 4/14/2021 in regards to your unauthorized use of YouTube for purposes other than what was allowed by the Parole Board as shown by the monitoring service RemoteCom":

h. "RULE #1G: IRRESPONSIBLE CONDUCT: Your conduct on 4/3/2021 and 4/4/2021 in regards to you using facebook Com to search for an individual and business which is unauthorized use of internet as permitted by the parole board and a violation of SEX A conditions":

i. "RULE #1H: IRRESPONSIBLE CONDUCT: Your conduct on 3/16/2021 in regards to a text message you sent to an unknown phone number that may be threatening in nature":

j. "RULE #1J: IRRESPONSIBLE CONDUCT: Your conduct on 4/14/2021 with respect to you resisting arrest by the Massachusetts parole board for parole violations":

k. "RULE #1K: IRRESPONSIBLE CONDUCT: Your conduct on 4/14/2021 with respectf to you resisting arrest by the Massachusetts Parole Board for parole violations":

l. "RULE #1I: IRRESPONSIBLE CONDUCT: Your conduct on 4/14/2021 with respect to you resisting arrest by the Massachusetts parole Board for parole violations":

113. Although, Russell. claimed Norris's phone was "Fingerprint Protected" On April 21, 2021, there was activity on his phone showing Russell or Devlin. were using his phone and Communicating with others.

114. Mrs. Guerra-Norris, exchanged text messages with Russell or Devlin.

The Text messages state:

"hey, some guy call saying he's a parole officer"

"Sorry I thought this was my friend Kevin's phone"
" So if nothing is wrong why r u answering Kevin pho..."

115. Russell, called the number that Mrs. Guerra-Norris was using and identified himself as Norris's parole officer, and left a vocie message.

116. Additionally, Mrs. Guerra-Norris, called Norris's phone, and Russell answered his phone.

117. A Preliminary parole revocation hearing was scheduled for April 26, 2021 at 9:00 a.m. at MCI Cedar Junction before Hearing Examiner David O'Connor.

118. Prior to the preliminary hearing, the Board's compliance officer Defendant Book provided Norris's Attorney Aprodu, with evidence that would be used against him at the hearing, such as the parole violation report, Parole Forms A and C, Google and YouTube search results for his phone, YouTube Screenshots, Smartphone screen shots, Facebook search results, song lyrics to "WAP" by Cardi B, Redacted version of Casenotes, and Google search results for "Date4pussy.us."

119. Hearing Examiner David O'Connor recommended a provisional revocation after the preliminary hearing. The Preliminary hearing Summary indicated, that, Mr. O'Connor, relied on various emails exchanged between Russell and RemoteCom, these emails were not provided to Norris and/or his Attorney.

120. On May 6, and 17th 2021, Attorney Apredu, submitted correspondence to Defendant Book, requesting access to certain documents in the possession of the Parole Board, including

unredacted version of his client case notes; pursuant to 120
CMR 303.10 summaries of all the documents that have been
redacted or deemed confidential and may be used to support
revocation, including but not limited to a summary of the
redacted information in the case notes; Any and all documentation
(Including emails) relating to coomunications beetwen Russell
and Develin, from August 2020, to the present; Incident reports
or medical records filed or pertaining to the parole officers
that were allegedly injured on or about april 14, 2021, all
documenting their alleged injuries; Copies of any surveillance
video from April 14, 2021, from the parole office in Worcester
where the alleged resisting arrest occurred; Revocation data,
including race, summarizing the number of individuals whose
parole were revoked by Devlin; and the release of Norris's
cell phone to her.

121. Additionally, Attorney Aprodu, contacted both Defendant
Murphy and Russell, requesting access and production of Norris's
smartphone.

122. On May 18, 2021, Norris requested permission from the Board
to present testimony from the following witnesses: Mrs. Guerra-
Norris; Professor Robert Nesson (Friend-mentor); and David
Lambert (Sex offender therapist).

123. Norris also requested the participation of Board Member
Dr. Charlene Bonner, to participate in his final revocation
hearing. The basis for this request, was that, he suffers from
disabilities such as anxiety and post-traumatic stress disorder
(PTSD) and Dr. Bonner has special expertise as a psychologist.

124. Norris also requested tha Board member Hurley and Moroney
be excluded from the hearing. As grounds for this request,
both were named as defendant's in his pending lawsuit against

-21-

the Massachusetts Parole Board, and due to certain
comments from them, that is rooted in bias.

125. On May 19, 2021, the Board denied Norris's request to
present witness testimony. Defendant's Hurley and Dupre,
wrote: "The information they wish to provide is not relevant
to the alleged parole violations. Also they denied Dr. Bonner's
participation.

126. The day before his hearing, Defendant Walsh, contacted
Attorney Aprodu, regarding discovery, but didn't provide
the **discovery requested** in her May 6, and 17, 2021 correspondence,
access to his Smartphone, and/or all the documents that the
Board be relying on at the final revocation hearing.

127. The final parole revocation hearing took place on May
26, 2021, before Defendant's Hurley and Dupre. Defendant
Moroeny, recused herself from participating in his hearing.

128. The Defendant's revoked his parole, and denied reparole.
They rendered a decision that did not explain why they revoked
parole, what was the grounds—evidence they relied on for
each parole violation's, and why incarceration was necessary and
why less severe sanctions could not have been imposed.

129. On or about June 25, 2021, Norris filed an Appeal of
Hurley's and Dupre's decision pursuant to 120 CMR 304.02(1).
Norris argued, among other things, that the Defendant's violated
due process by failing to make proper disclosures, preventing
his ability to present witness testimony, was not provided with
a neutral panel, the board failed to articulate the reasons
and eveidence reled on for each parole violation, why the
violations required incarceration as opposed to a less severe
sanction, that the evidence did not support a finding that
Norris violated parole and that the parole conditions were in

violation of his constitutional rights.

130. On June 31, 2021, and July 5, 2021, Attorney Aprodu,
again requested access to certain documents in possession
of Defendant's Book, Walsh, Moroeny, and Murphy, and access
and production of his smartphone.

131. On July 16, 2021, Defendant's Hurley and Dupre, denied
his appeal in a written decision. The decision stated as
follows:

> "Appeal reviewed and denied. Mr. Norris had a full and
> imapartial hearing, in accordance with agency policy.
> He was issued a parole manual on 8/27/20 by IPO Nevens
> prior to release from the Massachusetts Treatment Center.
> On 8/31/20, Mr. Norris reviewed and signed a special and
> sex a conditions with APS Lind at region 4 office. It is
> the responsibility of the parolee to know and understand
> the conditions of parole supervision. In rendering their
> decision, the Board considered the testimony provided
> during the hearing and documentation to include
> information regarding unauthorization use of the internet
> provided by Remote.Com. This is a direct violation of the
> Sex A conditions. Documentation considered was screenshots
> of text messages, inappropriate pictures of women, searches
> on YouTube, and a violation notification from XBOX live
> for violating the Microsoft Service Agreement. In regard
> to his arrest on 4/14/2021 at the region 4 office, the
> board did consider the field officers versions of the
> events and photographs of the injuries sustained by
> staff. Lastly, the board did not affirm all the violations
> contained in the notice of final parole revocation hearing
> form."

132. On August 19, 2021, Defendant's Murphy, Russell, Devlin,
and Moroney, finally granted Norris to his smartphone.

133. On this same day, Attorney Matthew J. Koes, travelled to
the region 4 office and retrieved Norris's smartphone.

134. On this same day, Attorney Koes, and Norris, met via Zoom
to review the contens of the Smartphone. Attorney Koes, was
able to access the smartphone via using a 4-digit pin provided
by Norris.

135. The review of the Smartphone by Attorney Koes revealed evidence that contradicted and/or showed some of the parole violations were fabricated.

   a. That Norris's smartphone was not fingerprint protected;

   b. When he activated the phone, it's last location showed North Attleborough and was last activated on April 27th 2021, at 2:16 a.m. :

   c. That his call log demonstrated that, on April 12, 2021 at 11:05-11:06 a.m., Norris called and sent text messages to his attorney, Eric Tennen. Disputing the allegation that he was accessing a website and viewing nude photos of young women;

   d. The call log also demonstrated that on April 21, 2021, a week after Norris had been taken into custody, a phone call and text messages were answered at 3:25 p.m. which lasted ten seconds;

   e. His search of Norris's Youtube application "Search history" did not reveal any searches for any sexually explicit music videos, and/or anti-law enforcement videos.

136. On or about August 20, 2021, Norris appealed to the full parole board, pursuant to 120 Code Mass. Regs. ẞ 304.02(2), by re-submitting the appeal of the Parole Board's decision and a Supplemental Memorandum in support with supporting documents.

137. On August 30, 2021, Attorney Koes, submitted a correspondence to parole board Chairwoman, Defendant Moroney, requesting access to various documents that was not provided to him during the revocation proceedings. Attorney Koes requested access to the following:

   1. A copy of the state Police Forensic Analysis report of his phone;

   2. Any and all statesments and photographs relating to injuries purportedly sustained by field officers in relation

-24-

to his arrest on April 14, 2021;

    3. Any and all emails between Russell and Remotecom;

    4. Unredacted versions of the documentary evidence submitted at his revocation hearing;

    5. Emails by and between Russell and Devlin;

    6. Any video surveillance tapes of his arrest on April 14, 2021;

    7. Any and all written parole conditions that prohibits Norris from deleting text messages;

    8. Revocation data, including race, summary of the number of individuals whose parole was revoked by Defendant Kevin Devlin;

    9. Revocation data, including race, summary of the number of individuals whose parole has been revoked by board members Defendant's Hurley and Dupre;

    10. Any and all paystubs collected by the parole board relating to Norris's employment while on parole;

138. On September 17, 2021, Attorney Koes, received a response to his corresondence to Moroney, via an email from Walsh. Walsh response failed to provide access to the requested documents, except his paystubs. Moreover, his response alleged the documents were protected, that the board members didn't rely on photographs and that the board had no video surveillance footage.

139. On September 21, 2021, Attroeny Koes, again wrote Moroney regarding access to documents in their possession, and Walsh's response.

140. Attorney Koes, provided proof that Devlin and Russell, had applied for a search warrant for his cellphone and had sworn in an affidavit, that it was delevered to the State police for forensic analysis, that the board members did rely on photgraphs and "versions of the incident" of Norris's arrest on April 14, 2021.

-25-

and that the emails between Russell, and RemoteCom, are
not confidential, and if they are, board regulation 120
Code Mass. Regs. ß 303.10, requires disclosure in summary
form.

141. Moroney did not respond to this correspondence.

142. On November 8, 2021, Attorney Koes, filed a Certorari
Complaint in Worcester Superior Court.

143. Moreover, Attorney Koes, submitted an affidavit from
Forensic Expert Steven R. Verronneau. Mr. Verronneau, examined
Norris's smartphone. His examination revealed, that, there was
third-party applications on his phone, and there was no evidence
that he had access the alleged websites and no evidence that
Norris searched for pornographic or adult-themed material.

144. In December of 2021, the Parole board submitted an **"Unredacted"**
**Version of** Norris's Casenotes in conjunction with the "Certorari
Civil Complaint."

145. The casenotes revealed that Russell and Devlin, submitted
fabricated information to the parole board. On April 13, 2021
Devlin, submitted an entry stating the following;

> "At approximately 3:00 p.m. parole officer spoke with parolee's
> sex offender counselor. Parole officer discussed what
> has been discovered through investigative means.
> Counselor reported that it was his professional opinion that
> parolee is now at a moderate risk(having previously been
> scored at a low risk), showing red flags such as impulsivity,
> objectifying women, not being faithful, not talking in
> group about certain issues."

146. Norris, immediately contacted his sex offender therapist
David Lambert regarding this entry. Mr. Lambert, denied that he
made these statements.

-26-

147. Attorney Koes, also contacted Therapist Lambert, to discusss this case note. Mr. Lambert, informed counsel, that it was his practice to give a risk assessment to a parole officer over the phone and doubted that he did so in this instance. Furthermore, Mr. Laambert wrote:

> "Mr. Norris was most recently assessed in January of 2021 on the STABLE-2007 to be a Low Risk for re-offense. At the time he was returned to custody, information was presented by Mr. Norris' parole officer regarding his behaviors in the community. That information was not available at the time of his last scheduled STABLE assessment. It is possible that his dynamic risk would have changed based upon this new information, but a formal risk assessment was not completed as Mr. Norris was no longer a client in the community group once he was returned to custody."

148. Upon information and belief, Russell and Devlin, used this fabricated "Risk assessment" to build a case to revoke Mr. Norris's parole.

149. On January 3, 2022, Attorney Koes, submitted a second supplemental memorandum in support of Appeal to the full Board. The document(s) provided material material misrepresentations and fabricated evidence to the parole board.

   * Russell intentionally misrepresented the scope of RemoteCom monitoring;

   * Russell made false statements in the sworn search warrant affidavit. The phone was fingerprint protected, and he could not access it;

   * That Norris had a third party application on his phone;

   * That Norris did not search for, and did not view nude photos on his phone;

   * That Norris used YouTube without authorization. Also that He was watching and searching for Anti-Law enforcement and Sexually explicit music videos

    * That Russell submitted an altered document labelled
    "Youtube" Searches;

    * Was using Youtube from March 5, 2021.

150. To date the Parole board has failed to respond to
Norris's Appeal, and to conduct a proper investigation into
the allegations made by Attorney Koes, regarding the actions
of Devlin and Russell.

151. Norris's liberty interest was revoked based on false and
fabricated parole violations and evidence submitted by Russell,
and Devlin.

    a. That Norris had a third party application or deleting
    text messages as on your smartphone per Remotecom
    employees. This allegation was fabricated, and evidence
    of such comes by way of the email received from RemoteCom,
    stating " I looked at his text messages and it does appear
    that he may need an appointment to see if he is using a
    different messaging app that we may only be able to see
    the received messages rather than both sides of the
    conversation", additionally Russell and Devlin, had
    access to Norris's Browsing history, so they knew or
    should have known, that he **never** installed a "Third party
    application", and they knew that Norris was never informed
    that he was prohibited from deleting text messages;

    b. That he arrived at the region 4 office with a smartphone,
    that was fingerprint protected, preventing the phone
    from being searched. Defendant's knew that this was false,
    since they were answering calls and text messages on
    his phone, and Devlin, had Norris's phone at and/or near
    his home residence;

    c. That he was looking at nude photos of young women on his
    smartphone on 4/12/2021, at approximately 11:04 AM.
    Defendant's Devlin and Russell, Knew that this allegation
    was untrue, because they had access to his Browsing
    history, emails and text messages. They knew or should have
    known, that at 11:05 AM Norris was actually emailing,
    and texting and calling his Attorney Eric Tennen.

d. That he was searching for and viewing sexually suggestive music videos at all times of day and night. Furthermore, Defendant's Russell and Devlin, submitted a document to the parole Board, labelled **"Youtube searches"** in "hand-writing. The Defendant's knew this allegation was untrue, and fabricated. An examination into Norris's **actual Youtube search history** did not show any searches for "sexually Suggestive Music Videos", including the **"WAP music video** by Cardi B and Megan thee Stallion;

e. That Norris searched for and was watching Anti-Law enforcement videos before arriving at the region 4 parole office;

f. That Norris had a third-party Application on his phone, and was deleting texts. The Defendant's knew this allegation was also fabricated due to the RemoteCom, employee stating "it does appear he may need an appointment to see if he is using a different messaging app." Additionally, it's fabricated because at no time did they inform Norris, that he was **prohibited from** deleting text messages;

g. That Norris, refused a lawful command to turn around and cuff up, resisted arrest and caused injuries to Four (4) parole officers. Defendant Russell and Lind, knew that these allegations are false, and fabricated. Proof the falsity comes by way of the following:

   * Russell submitted Two (2) different versions of the parole violation report. In one version, he alleged One (1) parole violation of resisting arrest, and **did not aver** that Norris caused any injuries. The Second version, he submits three (3) additional allegations of resisting arrest, and allegations that Norris now caused injuries to Four (4) parole officers;

   * Russell did not allege in his case notes that Norris caused himself and/or any other parole officer injuries on 4/14/2021;

   * Russell: contradicted himself in the parole violation report.

---

4) Additionally, the allegation of unathorized use of Youtube is fabricated, because at no time did the Defendant's advice Norris, that he was prohibited from listening to a certain type of Music.

"Parolee then arrived at Region 4 Office, was brought
to the conference room by parole officer who attempted
to be place parolee under arrest. Parolee physically
resisted. Parole officers then gave lawful commands to
parolee to put his arms behind his back and to stop
resisting."

"You were instructed to report to the region 4 parole
Office. When you reported you were escorted to the
conference room by your parole officer. "Your parole
officer then gave you lawful instructions that you were
under aresst and to put your hands behind your back. At
this point you refused to comply, resitsted attempts by
parole officers to place you in handcuffs."

Defendant Russell admits that he placed his hands onto Norris
Without warning, and provides different testimony–allegations
regarding who gave Norris a Lawful command that he was under
arrest.

   h. The Defendant's Russell, Lind, O'Dell, and Bedard, didn't
      mention any alleged injuries to the doctor at Umass
      Memeorial Hospital when they discussed Norris's arrest
      with him;

   i. Defendant Lind, didn't mention any allegation of injuries
      caused to her, and/or other parole officers in her
      Supervisors comments submitted in Russells' parole violation
      report;

   j. That he did not have permission to Play XBOX live, when in
      fact, he granted Norris permission;

   k. That Norris had sent a text to an unknown person that may
      be threatening in nature. Russell, knew this is false,
      the allegation was made due to his bias and conspiracy
      to revoke Norris's parole. Proof comes by way of, the
      fact, that the alleged possible threat was made on 3/16/21,
      but he was charged for a possible threat on April 16, 2021;

152. Upon information and belief, Norris further alleges, that
the purported "photographs of injuries" submitted by Defendant's
Lind, Bedard and O'Dell, were also fabricated.

153. Upon information and belief, Norris further alleges, that, Defendant's Lind, O'Dell and Bedard, fabricated the **"photographs"** due to a conspiracy with Devlin, and Russell, and due to Norris's Civil Action Complaint and Grievance against Devlin, and Russell.

154. Proof of Fabrication comes by way of the Photographs being submitted/collected on May 18, 2021, a day after Attorney Aprodu, requested medical records showing any injuries, and the **alleged photographs** of injuries were not submitted with the parole violation report.

155. Upon information and belief, Norris further alleges, that, Russell and Devlin, submitted a parole violation with false and fabricated allegations due to Norris's grievance against them, his Civil Action Complaint against Devlin, challenge to his parole conditions and racial discrimination.

156. Defendant's Hurley and Dupre, relied on the false and fabricated evidence to revoke Norri's parole. Proof comes by way of their comments during his final revocation hearing held on May 26, 2021, their decision to revoke parole, and Denial of his Administrative Appeal.

157. Hurley and Dupre, relied on the following false and inaccurate information:

   a. That he was searching for and viewing sexually suggestive music videos;

   b. He was using Youtube with permission;

   c. He was playing XBOX live without permission;

   d. He was watching Anti-Law enforcement videos;

   e. On 4/12/2021 he accessed a website to view nude photos of young women;

f. On 4/14/2021, he resisted arrest and caused injuries to four parole officers;

g. That he may have sent a threaten text to an unknown person;

h. That the text messages between him and Angela, is evidence of a inappropriate and extra-martial affair. When in,fact, Angela is his mother-in-law;

i. That his therapist David Lambert, had revised his risk assessment to increase it, to moderate risk;

158. Norris's liberty was also revoked without him receiving the minimum **Due Process protections** of **Morrissey V. Brewer**, **408** U.S. 471 (1972), and the **Parole Board's Revocation Regulations**, 120 CMR 303.00 et seq. Evidence in support comes via the following:

a. He was deprived access to all the evidence against him, including the parole violation report(s), alleged photographs of injuries, surveillance footage, unredacted case notes, his smartphone, The **RemoteCom emails**, and the results of his smartphone by the Massachusetts State police, as ordered by Russell and Devlin, in violation of Due Process rights and 120 CMR 303.10(4), 303.21(1)(a), and 303.22(6);

b. He was deprived access to documents the Defendant's "Deemed" confidential, i.e., certain case notes, and Remotecom emails;in violation of 120 CMR 303.21(2) & 303.22(6)(b);

c. He was deprived a decision stating the specific grounds and evidence relied upon to revoke his parole in violation of Due process, and 120 CMR 303.24(c)(d) and 303. 25(b);

d. He was deprived a hearing before a neutral and detach board member and hearing before a impartial panel in violation of Due Process, and 120 CMR 300.02(3);

e. He was deprived and denied "Consideration of less severe sanctions and alternatives to confinement" in violation of Due Process, and 120 CMR 303.01(2), and ther terms of a settlement agreement made in **Archer V. Wall**, Suffolk Superior Court Civil Action No. 1384CV04149;

f. His parole was revoked on inaccurate and false information and based on a violation of certain parole conditions, i.e., unauthorized use of internet, deleting texts and/or having a third party application, viewing sexually suggestive music videos and nude photos, etc.

g. His parole was revoked, and he was denied reparole based on misconduct and conditions that he was not adequately informed was prohibited conduct. Parole reguations and law, required **notification be in writing** and that he sign in writing acknowledging receipt, purusant to 120 CMR 300.07; 120 Par 359; and M.G.L. c. 127 Section 131.

159. Additionally Norris's parole was revoked, based on parole conditions that were unlawful and in violation of the United States Constitution and Massachusetts Declaration of Rights.

a. Revocation based on use of Youtube and communicating with others via XBOX live. The United States Supreme Court held in **Packingham V. North Carolina**, 137 S. Ct. 1730, 1731 (2017), that sex offenders have a right to access the internet to engage in their First Amendment right. Since Packingham, **other** Courts have cited the ruling to challenge parole conditions restricting and/or barring internet access for paroled sex offenders. See Yunus V. Lewis-Robinson, No. 17-cv-5839 (AJN), 2019 U.S. Dist. Lexis 5654, at *49-50 (S.D. N.Y. Jan. 11, 2019) ("Under Packingham, blanket limitations on an individuals ability to access social media will receive intermediate scruntiny, even when imposed as conditions of parole"); Manning V. Powers, 281 F. Supp. 3d 953 (CD. Cal. 2017)(A condition of parole prohibiting access to the internet violated the First Amendment, noting that, "none of the defendant's convictions, each of which occurred at least twenty years ago, involved the use of the internet or social media"); Jones V. Standford, 489 F. Supp. 3d 140 (2020)(" Allowing the Plaintiff's motion for preliminary injunction based on prohibitions on social media, including Youtube, and citing **Packingham**").

---

5) His internet ban and restrictions were not tailored to his criminal history, and the Defendant's **did not** present evidence that he posed a particular threat of internet-based recidivism

b. Revocation was based on a retroactive policy, e.g., the Sex offender Condition policy, that disadvantaged and prejudiced him. The **Policy was not in place** when Norris, was convicted. The "policy" disvantaged him due to limitations of his free speech, Automatic Requirement of the punishment of a GPS monitoring device, restrictions to the internet, and additional burdensome rules that could/and did result in the loss of liberty. Furthermore, The Parole Board and Massachusetts Supreme Judical Court have both declared, that a inmate/parolee is entitled to the parole policy and law in place when he/she is Convicted. See Tyrone Clark V. Massachusetts Parole Board, et al. Suffolk Superior Court No. 03-319D (Parole Board counsel agrees in open Court, inmate/Plaintiff is entitled to policy in place when he was convicted, and Court denys Boards motion to dismiss); **Clay V. Masssachusetts parole Board**, 475 Mass. 133, 135 (2016)(" SJC rules that inmates is entitled to parole policy/law in place when he was convicted, and reverses Board's decision and orders his release");

c. Revocation was based on a policy, e.g., Sex offender Conditions that contains prohibitions that are vague. Norris had his liberty revoked based on allegations, i.e., he playing against individuals on XBOX live, he was viewing nude photos on his phone, and watching sexually suggestive music videos on Youtube. Defendant's Hurley and Dupre, declared, that, this behavior violated the "Sex offender Conditions". Upon information and belief, Norris believes the Defendant's relied on the language in the policy, that prohibits "you will not view pornography of any type" to revoke parole. Norris avers the policy is unconstitutionally vague, since it doesn't define what constitutes pornography, allows arbitrary interpretation and enforcement by a parole officer, and doesn't clearly define the **alleged conduct** that the Defendant's used to revoke his liberty/parole;

    d. Revocation was based on the reliance of false information. The use of false information in a parole violation can be a due process violation in and of itself. See <u>Wilborn V. Walsh</u>, 584 F. Supp. 2d 384 (D. Mass. 2008).

160. A Harvard University study published in September of 2020, found sentencing disparaties for people of color in Massachusetts. The study found that people of color are more likely to serve longer sentences, and The Commonwealth significantly outpaced the national race and ethnicity disparities rates in incarceration, imprisoning black people at a rate of 7.9 times that of white people.

161. Upon information and belief, Black parolees are subjected to a increase risk of revocation.

162. According to research by Vincent Schiraldi, senior research scientist at the Columbia School of Social Work, and Kendra Bradner of Columbia Justice Lab, people of color are more likely to be sent back for parole violations, and blacks are 50% more likely than whites to have their paroles revoked for technical violations. See the Article "Revocation Nation: Reincarceration for technical parole violations in the age of COVID-19.

163. In December of 2021, The Special Commission on Structural Racism in the Massachusetts Parole Process Published its final report, and found that due to the failure of Massachusetts and the Parole Board to collect adequate data race, it was hindered in making a finding regarding the impact of racial discrimination in the parole system.

<u>The Parole Board's Policies and customs</u>

164. The Parole Board and/or Chair Defendant Moroney has failed

-35-

to ensure that Russell, Devlin and its other parole officers
do not file parole violation reports and other statements
that include deliberate falsehoods.

165. The Parole Board and Moroney has failed to ensure that
Devlin, Russell and its other parole officers do not fabricate
evidence.

166. The Parole Board and Moroney has failed to ensure that
parolees are adequately notified of their special parole
conditions. As example, Norris cites an audit that highligthed
that there is a systemic problem with the parole board's ability
to properly notify parolees of their parole conditions. See
**https://www.mass.gov/info-details/mpb-could-not-provide-**
**documentation-to-substantiate-that-parolees-received-all-required-**
**reentry-forms.** Moreover, former parolee, Roberth Thachther,
was violated and had his parole revoked due to his failure to
submit the correct mileage and time in a log book, and failure
to inform his parole officer that he purchased a car, despite
thet fact, that, he was never made aware of these conditions/rules.

167. The Parole Board and Moroeny has failed to ensure that
Parole board policies and conditions of release clearly define
what conduct is prohibited, and what conduct can lead to
provisional revocation.

168. The Parole Board and Moroney has failed to ensure that
Devlin, Russell and its other parole officers do not discriminate
against parolees due to race or the nature of their criminal
convictions.

169. The Parole Board and Moroney has failed to ensure that
its parole officers are not allowed to make their own arbitrary
interpretation of the Sex offender conditions.

-36-

for example, former parolee Nelson Perez, was returned to
custody and had his parole revoked, based on the allegation,
that, he violated the terms of release, via failing to
disclose to his parole officer, that he was engaging in a
sexual relationship with a women other than his wife. No
parole official ever made Mr. Perez, aware, that, this
requirement pertained to him, and the **"Condition"** states that
this condition **only applys** to parolees classified as level
two's or three's by the sex offender Registry board, Mr. Perez,
was a level 1. Furthermore, during his parole supervision his
parole officer required him to submit a log book of his daily
activities, which is also I rule that apply's to level two's
and three's. Moreover, Mr. Perez, was allowed to access the
internet with a Smartphone, without any restrictions and/or
monitoring.

170. The Parole Board and Moroney have a practice of permitting
Constitutional violations and that the custom or practice is
the moving force behind the Constitutional violations against
Norris.

171. The Parole Board and Moroney's policies and customs lead
to Russell, Lind, O' Dell, Bedard and Devlin, that they could
violate Norris's Constitutional rights by way of Fabrication,
failure to inform him of certain parole conditions, retaliate
him due to the excerise of his First Amendment Right, and Race,
engage in unlawful searches and seizures, withhold documents
and smartphone from him, and using excessive force against him.

172. The Parole Board and Moroney's policies and customs allow
and expose certain parolees to abuse, racial discrimination,
and mistreatment due to language that provides discretion
for arbitrary interpretation and enforcement.

173. The Defendant's have all committed miscoduct **outside
the scope** of duties and purview, and moreover have violated
**clearly established** Constitutional law. **Morrissey** established
certain minimum Due process protections, including (a) Written

notice of the claimed violations of parole; (b) Disclosure
to the parolee of evidence against him; (c) Opportunity to
be heard in person and to present witnesses and documentary
evidence; (e) a "neutral and detached hearing body; (f) a
written statement by the factfinders as to the evidence relied
on and reasons for revoking parole. Furthermore, this Circuit
and Massachusetts Appeals Court have recognized these
Rights. See **Wilborn V. Wall**, Civil Action No. 13-11783-GAO, 2015
U.S. Dist. LEXIS 129305 (Court deny's parole board Defendant's
motion to dismiss, based on the failure to provide the **"Morrissey"**
protections); Archer V. Massachusetts Parole Board, 92 Mass.
App. Ct. 1102 (2017)(Court reverses lower Courts dismissal,
and remands back to Superior Court due to the failure to follow
"Morrissey").

174. There's no parole Board policy that allows parole officers
to fabricate parole violations against parolees.

175. There's no Parole Board policy that allows parole board
officials from withholding a parolee's **personal property**, and
the evidence used against him from him, and/or sanctioning
and/or revoking parole status based on an ellegation of
violating a condition that **was not provided** in writing and
a parolee signed acknowledging receipt.

176. There's no Parole Board that allows Parole Board Officials
to rely on false information to revoked a parolees parole
status.

177. In suuport of Norris's claims described herein, that he
was deprived Due Process and substained violations of his
Constitutional Rights, he has attached a sworn Affidavit from
an officer of the Court, See **Affidavit** of Attorney Matthew
J. Koes, attached as **EXHIBIT A.**

-38-

**Norris's Damages**

178. As a direct and proximate result of the Defendants' actions, Norris has suffered injuries and damages, including, but not limited to:

a. Intrusion and seizure of his personal property and a profound violation of his privacy, including communications with his wife and lawyers;

b. Violation of his body integrity by way of Physical assault, and unnecessary and unreasonable force, that, resulted in physical, mental and emotional injuries;

c. Deprivation of due process rights by the presentation of false evidence;

d. Deprivation of liberty based on the reliance of false information and denial/deprivation of the **Morrissey** Requirements and due process rights afforded by 120 CMR 303. et seq;

e. Deprivation of liberty by imprisonment for a period of one year and accruing;

f. Severe humiliation, embarrassment, defamation and emotional distress;

g. Loss of Consortium, and interference with his marriage, and family relationships; and

h. Lost wages of approximately Eighty-Five to One Hundred thousand dollars and accruing.

### COUNT 1
### Due Process Violation
### Failure to Inform
### 42 U.S.C. section 1983
### (Defendant's Russell, Lind and Devlin)

179. Paragraphs 1 through 178 are incorporated herein by referenced as if fully set forth herein.

180. The Defendant's each had a Constitutional and Regulatory and Statutory duty to properly inform Plaintiff of all his Special conditions parole, and to adequately warn and inform him of what type of conduct was prohibited and could result in discipline and revocation.

181. The Defendant's failed to perform their duty by way of failing to inform him, that, he was prohibited from deleting text messages, Communicating with people via XBOX live, listening and/or watching certain types things on YouTube and was watching/viewing nude photos.

182. In addition, Defendant's had a duty pursuant to the Supervision manual for parolees to provide a copy of his parole conditions and discuss with his home sponsor.

183. The Defendant's omissions, deliction and breach of duty violated the protections afforded by the Fourteenth Amendment of the United States Constitution, article 12 of Massachusetts Declaration of Rights, Mass. Gen. Laws. Ch. 127 Section 131, 120 CMR 300.07, and 120 Par. 359.

184. As a result of these violations of the Due Process Clause and his substantive due process rights, Norris has suffered the damages described herein. Norris will continue to suffer harm until the Parole Board holds a new revocation hearing and the parole violations are removed from his parole file.

-40-

COUNT 2
## Due Process Violation
### Fabrication
42 U.S.C. Section 1983
(Defendant's Russell, Devlin and Lind)

185. Paragraphs 1 through 184 are incorporated by reference as if fully set forth herein.

186. The Defendant's in bad faith knowingly submitted a parole violation report with parole board officials, that, contained fabricated evidence and allegations of parole violations.

187. The Defendant's knowingly fabricated the following against Norris:

* His smartphone was fingerprint protected preventing them from accessing his smartphone;

* He was viewing nude photo's on his cellphone. They knew or should have known that this was inaccurate since they had access to his internet browsing history, text messages and emails;

* That he was watching sexually suggestive music videos and anti-law enforcement videos;

* That he searched for sexually suggestive music videos, and submitted a **fabricated document labelled** "Youtube" searches, that was inaccurate and false;

* He was using Youtube without permission;

* He was given a **lawful command to** turn around and place his hands behind his back, because he was under arrest and he refused, and he actively resisted, causing injuries;

* That his therapist Mr. Lambert, had informed them, that due to new information he would increase his risk assessment score;

* He had a Third-party Application on his smartphone, and deleting text messages to avoid supervision (NOTE: No evidence of a rule or casenote showing he was informed this was prohibited behavior)

* That he was having an extra-martial affair. The Defendant's submitted text messages from his mother-in-law, that they portrayed as evidence of an affair:

* They submitted alleged screenshots of music videos, showing so-called "sexually suggestive music videos", these claims were knowingly false, because forensic expert Steven Verroneau, examination of his cellphone and Youtube browsing history, revealed that Norris, didn't watch the "Wap" video, by Cardi B.

188. The Preliminary hearing examiner, Defendant's Dupre and Hurley, and parole board officials have relied on the false, and fabricated evidence and allegations submitted to revoke his liberty.

189. Upon information and belief, Defendant's intentional fabrication was due to animus reaosn.

190. The unlawful fabrication deprived Norris of his Constitutional right, to be free from him having his liberty revoked based on fabrication by a Government officer.

191. As a direct result, Norris continues to suffer great harm.as described herein, and will continue to suffer severe harm until the Parole board grants him a new revocation hearing, the fabricated parole violations and allegations are removed and expunged from his parole file, and he is released back onto parole supervision.

**COUNT 3**
**Violation of Massachusetts Civil Rights Act**
**42 U.S.C. section 1983**
**(Defendant's Devlin and Russell)**

192. Paragraphs 1 through 191 are incorporated herein by reference as if fully set forth herein.

-42-

193. Through their coercion, trickery and/or fraudulent conveyances the Defendant's caused Norris to install the monitoring services of RemoteCom.

194. Norris relied on their statements and assurances, and the parole Board, that, **Remotecom** was **"only"** being installed to **monitor his browsing** history.

195. Due to their trickery and fraudulent misrepresentations they were able to gain access to his private communications with his wife, legal documents, therapist and attorneys.

196. As a proximate causation, Norris, liberty was revoked on two parole violations obtained through his text messages and Emails, his privacy was violated, and he will continue to suffer harm until the Parole Board removes these violations, expunges the private information from his parole file, and grants a new revocation hearing that doesn't rely on these violations and information.

## COUNT 4
### Excessive Force

### 42 U.S.C. Section 1983
### (Defendant's Russell and O'Dell)

197. Paragraphs 1 Through 196 are incorporated herein by reference as if fully set forth herein.

198. The Defendant's used unreasonable and unjustifiable force when arresting Norris, including assaulting him from behind, aggressively grabbing him from behind without warning, punching him, grabbing him around the neck area, and placing the handcuffs on him too tight and without regard for his safety.

-43-

199. The unreasonable force caused Norris, bodily injuries bruises, neck and arm pain, and caused him to have a panic attack and suffer grave emotional distress.

200. The unlawful misconduct violated Norris's Constitutional rights secured under the Fourth and Fourteenth Amendments of the United States Constitution, and Massachusetts Civil Rights Act, G.L. c. 12, Section 11I.

201. Norris has suffered and continues to suffer great pain due the misconduct.


## COUNT 5
### Assault and Battery
### (Defendant's Russell and O'Dell)

202. Paragraphs 1 Through 201 are incorporated herein by reference as if fully set forth herein.

203. Defendant's O'Dell and Russell, knowingly committed an assault and battery on Norris, on April 14, 2021, by waying of hitting and punching him.

204. The assault and battery caused physical, emotional and mental pain and suffering to Norris.


## COUNT 6
### Failure to Intervene
### 42 U.S.C. Section 1983, and G.L. c. 12, Section 11I
### (Defendant Lind)

205. Paragraphs 1 Through 204 are incorporated therein by reference as if fully set forth herein.

206. Defendant Lind, was the most senior parole board official on April 14, 2021, when Norris was arrested.

207. Upon information and belief she witnessed Russell, arresting him in a manner that did not comport with Parole Board policy and her training, and she witnessed O'Dell, using unreasonable, unnecessary and improper force against Norris, and she failed to intervene.

208. Upon information belief, Lind also heard Defendant Bedard, inform O'Dell, to calm down, but still didn't intervene.

209. In addition, Lind failed to provide immediate medical attention, when she failed to provide Norris, his anxiety medication and inhaler.

210. Defendant Linds' inaction, and omissions caused and/or contributed to Norris, being subjected to excessive and unreasonable force.

### COUNT 7
### Due Process Rights Violation
### Fabrication
### 42 U.S.C. Section 1983
### (Defendant's Lind, Bedard and O'Dell)

211. Paragraphs 1 Through 210 are incorporated herein by reference as if fully set forth herein.

212. On May 17, 2021, attorney Adela Aprodu, wrote a letter to the Parole Board requesting access to incident reports or medical records filed or pertaining to the parole officers that were allegedly injured on or about April 14, 2021, all documenting their alleged injuries.

213. Upon information and belief, the next day the Defendant's took photographs of their alleged injuries and submitted them to parole board officials.

214. Norris alleges that the photographs are fabricated, and proof comes by way of the following:

   a. He cannot recall Lind participating in the arrest;

   b. The Photos were taken on May 18, 2021, over a month after the arrest;

   c. None of them or Russell, mentioned to the Doctor at Umass Memorial hospital, that they were injured;

   d. Russell, and Lind, O'Dell, and Bedard, did not mention in Norris's casenotes that they were injured;

   e. Russell, submitted **two different** versions of a Parole violation report, one alleging one (1) allegation of resisting arrest, and **NO** allegation of injuries, and a second report with four (4) allegations of resisting arrest, and four (4) allegations of injuries. Also Russell's reports offered conflicting versions of how he arrested Norris, and who gave the alleged lawful command;

   f. The photographs were provided to Norris approximately a year after his arrest, due to parole board officials concealing them in bad faith, and there's no chain of custody for them.

215. Upon information and belief, Defendant's fabricated the photographs to Cover-up the unlawful misconduct of Russell, and O'Dell.

216. The Due Process Rights violation caused and/or contributed to his loss of liberty. The Parole Board has relied on the photographs.

217. As a direct result, Norris has suffered and will continue to suffer great harm until the Parole Board grants him a new Revocation hearing, and the allegations are removed from his parole file.

## COUNT 8
## Due Process violation
### Withholding
### 42 U.S.C. Section 1983
### (Defendant's Devlin and Russell)

218. Paragraphs 1 Through 217 are incorporated herein by reference as if fully set forth herein.

219. Through their refusal to disclose and provide Norris with discovery in their possession, e.g., his Smartphone, Google search history from April 5-14, 2021, Youtube search from April 2-14, the results of the examination of his smartphone by the state police, and **unredacted** casenotes from March and April of 2021, the defendants deprived Norris with a hearing comporting with the fundamental requirements of fairness in Violation of his due process rights.

220. Upon information and belief, the **unconstitutional withholding** and **concealment** from Norris, was done with malice, bad faith and intent to conceal their perjurious misconduct and fabricated parole violations.

221. In addition, defendants knew that the cellphone data would reveal that they submitted fabricated parole violations.

222. Moreover, Defendant Devlin, went as far as removing Norris's Cellphone from the region 4 office, to his home in North Attleboro, to avoid turning the cellphone over.

223. Norris was entitled to access to his cellphone and the documents pursuant to **Morrissey** and 120 CMR 303. et seq.,

224. The Defendant's actions deprived Norris of due process in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

-47-

225. The Defendant's violation of Norris's right to due process caused him to suffer irreparable harm. Norris continues to suffer harm today and will continue to suffer harm until the parole board holds a new revocation hearing, the parole violations are removed from his parole file, and the Sex offender registry board reinstates his level 1 status.

## COUNT 9
### Unlawful Search and Seizure
42 U.S.C. Section 1983
(Defendant's Devlin and Russell)

226. Paragraphs 1 Through 224 are incorporated herein by reference as if fully set forth herein.

227. By Searching and seizing Norris's text messages and emails,in his cellphone without his consent, authorization from the parole board, and without a warrant, defendants deprived Norris of Rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures.

228. By searching and seizing Norris's cellphone by answering telephone calls, and text messages, and removing his cellphone from the region 4 office,to Devlins' home, without his consent, authorization from the Parole Board and without a warrant, defendants deprived Norris of Rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures.

229. There's no parole board policy that grants authority to a parole officer to seize, emails and text messages, answer a parolees telephone calls and text messages, and remove and access a parolees personal property at their personal home.

230. As a result of these violations of his Civil Rights, Norris has suffered the damages described above.


## COUNT 10
### Violation of Compuer Fraud and Abuse Act
42 U.S.C. Sections 1029 & 1030
(Defendant's Devlin and Russell)

231. Paragraphs 1 Through 230 are incorporated herein by reference as if fully set forth herein.

232. Through deceit and fraudulent inducements defendants gained access to information in Norris's smartphone, including his private communications with his wife, attorney's, legal research and therapist, by way of his text messages and Emails.

233. Through deceit defendants were able to obtain access to Norris's telephone to answer telephone calls and text messages, and remove his cellphone from the region 4 parole office to defendant Devlin's home in North Attleboro.

234. Upon information and belief, while in possession of the cellphone defendants erased his Google History.

235. Defendants did not have Norris's consent to access his email files, his text messages, to answer his telephone calls and text messages. Moreover, they did not have his consent to access his cellphone in North Attleboro.

236. The access was unlawful and done in bad faith to harm Norris, invade his privacy and conceal their perjurious misonduct.

240.   As a direct result of their violations Norris, has substained injuries, including but not limited to, loss of privacy, emotional distress, embarassment, and loss of liberty.

## COUNT 11
### Violation of the First Amendment
### Retaliation
42 U.S.C. Section 1983
(Defendant's Devlin, Russell and )
(Lind)

241. Paragraphs 1 Through 239 are incorporated herein by reference as if fully set forth herein.

242. Upon information and belief, defendants retaliated against Norris due to him filing a lawsuit against defendant Devlin, filing grievances against Devlin and Russell, and filing a petition with the parole board to remove the supervision conditions placed on him by Devlin, e.g., GPS Monitoring device, Internet & Remotecom restrictions, and participation in a polygraph examination.

243. Due to Norris exercising his right to seek redress, the defendants knowing punished and retaliated against him by way of intentionally failing to inform him of certain conditions, fabricated parole violations against him, submitted a supervision narravtive with false information and withheld his smartphone and other documents from him.

244. Proof of retaliation comes by way of the proximity to to his lawsuit, grievances and petition to remove certain conditions, and parole violation report.

245. Additional, proof comes by way of comments made by Defendants Russell and Lind. Each wrote in their parole violation report

narratives that Norris, "Has attempted to change both his parole and sex offender conditions."

246. Moreover, Upon information and belief, Norris alleges that Defendant Devlin, retaliated against him, due to the Parole Board reparoling him. Defendant Devlin, Petitioned the parole board to rescind his parole, petitioned the parole board to increase his conditions and attempted to convince his wife to object to him being released to her home.

247. The Defendants action deprived Norris, of his First Amendment Right secured under the United States Constitution, to petition Government agencys' without reprisal.

248. As a proximate causation Norris has substained grave harm, including loss of liberty, emotional distress, loss of wages and Reclassification by the Sex Offender Registry Board.

## COUNT 12
### Defamation
### (Defendant's Devlin, Russell and Lind)

249. Paragraphs 1 Through 248 are incorporated herein by reference as if fully set forth herein.

250. Defendant's Russell and Lind, published and filed a parole violation report with the Parole Board that contained false information, e.g., he was having an affair, was viewing nude photos on his cellphone, was watching and searching for sexually suggestive music videos, had a third-party Application on his cellphone, was deleting text messages to avodi supervision, was using XBOX live and Youtube without permission, and engaged in criminal behavior, including resisting arrest.

251. Defendant Devlin, published and filed a note in Norris's case files, that, his therapist David Lambert, increased his risk assessment from low-risk to moderate risk.

252. The statements are untrue, and were made with malicious intent. The statements was shared with the Sex offender registy board, and relied upon to reclass Norris, and raise his risk level.

253. The Statements defamed, Norris, and caused him to suffer embarassment, emotional duress, loss of funds, loss of liberty and irreparable future harm.


## COUNT 13
### Equal Protection
### 42 U.S.C. Section 1983
(Defendant's Devlin, Lind and Russell)

254. Paragraphs 1 through 253 are incorporated herein by reference as if fully set forth herein.

255. Defendants intentionally treated Norris worse than other similarly situated parolees, singling him out for unfavorable treatment without justification in a discriminatory manner.

256. In subjecting Norris, to arbitrary treatment, Internet restrictions, Mandatory GPS Monitoring, sanctions based on false information, fabrication of parole violations and punishment for exercising his right to seek redress, the defendants violated Norris's right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

257. Norris has suffered, and will continue to suffer, irreparable harm from these violations until the Parole Board holds a new revocation hearing.

## COUNT 14
## Racial Discrimination
### 42 U.S.C. Section 1983
### (Defendant's Devlin, and Russell

258. Paragraphs 1 through 257 are incorporated herein by reference as if fully set forth herein.

259. Upon information and belief, Defendants targeted Norris, due to his race (Afro-American) and the racial overtones in his criminal case, e.g., the offenses are against a caucasian woman.

260. Upon information and belief, defendant Devlin, has a pattern of discriminating against men of color and parolees with interracial cases, e.g., Benjami Laguer, Ernest J. Dubose, etc.

261. Upon information and belief, Defendant Devlin, conspired with Defendant Russell, and parole Board officials to harm Norris, via parole violation due to his past comments to him "They should not have let you out for raping that white woman."

262. Defendants actions violated the Fourteenth Amendment of the United States Constitution, 42 U.S.C. 2000D, and G.L. c. 93, Section 103.

263. Norris has suffered great harm, including emotional and mental distress, loss of liberty, etc.

-53-

## COUNT 15
### Violation of First Amendment
### 42 U.S.C. Section 1983
### (Defendant's Devlin, Lind, and Russell)

264. Paragraphs 1 throuh 263 are incorporated herein by reference as if fully set forth herein.

265. Throuh defendants restricting him from using the internet for legal research, banking, counseling, religious purposes, news, redress with Government agencies, communicating with family and friends, social media and practice and exercise of free speech, they violated his First Amendment right.

266. Defendants had no adequate justification. There's no parole board policy that bars access to using the internet for these purposes, they did not rely on an individual assessment that Norris posed a risk to re-offend if allowed to use the internet, and they could not rely on his conviction, since it doesn't relate to a internet crime.

267. Additionally, defendant Lind, did not bar Duke Bean, or Nelson Perez, from using the internet. The only restriction that was placed upon Mr. Bean, by defendant Lind, was not to access or use facebook.

268. Furthermore, defendants punishment of Norris, for using Youtube, and XBOX live, is also a violation of his First Amendment right.

269. As a direct result, Norris, suffered emotional pain and suffering, harm to his reintegregation back into society, harm to his rehabliation, loss of liberty and interference with the exercise of free speech.

## COUNT 16
## Intentional Infliction of Emotional
## Distress

270. Paragraphs 1 through are incorporated herein by reference as if fully set forth herein.

271. Defendant's Devlin, Russell, and Lind, conduct of conspiring together to intentionally revoke Norris's parole status by way of deliberately misleading him about the nature and scope of **Remotecom**, intentionally failing to inform him of his parole and special conditions, and fabricating evidence and framing Norris, for revocation was extreme and outrageous conduct.

272. Defendant Devlins' misconduct of retaliating against Norris, due to racial prejudice, Norris filing a grieavnce against him, a lawsuit against him and seeking removal of the arbitrary conditions he placed on him, by way of petitioning the parole board to rescind his parole status, petitioning the board to increase his parole conditions, instructing Julie Devlin, to call his wife to persuade her to not allow him back to her home, Sanctioning him for violations he didn't commit and framing him for parole revocations was extreme and outrageous conduct.

273. Defendant Russell and O'Dells' misconduct of assaulting Norris, and using unnecessary and unreasonable force against him, causing a panic attack and and injuries was extreme and outrageous.

274. Defendant Linds' failure to intervene on April 14, 2021, and prevent Russell, from arresting him in a improper manner, and failing to prevent Russell, and O'Dell, from using excessive force and failing to provide adequate medical attention was extreme and outrageous conduct.

-55-

275. Defendant Lind, Bedard and O'Dell, submission of
fabricated photographs of injuries, which was submitted
in an attempted to prejudice Norris, cover-up the improper
tactics, and excessive force, and due to the conspiracy
with Devlin, and Russell, to revoke his parole.

276. The misconduct of the defendants causes Norris, to
endure severe and grave emotional pain and suffering, including
anxiety, panic attacks, suicidal thoughts, depression, and
problems with sleep, fear around men and mistrust issues.

277. In addition, the misconduct has caused grave stress on
his marriage and family relationships. Norris, has suffered
emotional duress due to his failure to adequately support his
wife, as she went through cancer treatments.

278. As a direct result Norris, has suffered outrageous emotional
Pain and suffering.

### COUNT 17
### Due Process
### Deprivation of a Fair Hearing
### 42 U.S.C. Section 1983
### (Defendant's Dupre and Hurley)

279. Paragraphs 1 through 278 are incorporated herein by
reference as if fully set forth herein.

280. Through their denial of reasonable discovery and their
refusal to disclose information to the nature of Norris's alleged
parole violations, failure to disclose documents deemed
confidential, Hurleys' refusal to recuse herself, and their
failure to consider less severe sanctions and alternatives to
confinement, and issue a decision stating the reasons and evidence
relied upon to reach their decision, the defendants failed to
provide Norris with a hearing comporting with the fundamental

requirements of fairness in violation of fairness in violation of Norris's due process rights.

281. Evidence of the deprivation of a fair and impartial hearing comes by way of the following:

a. He was denied access to the alleged photographs, remotecom emails, both versions of the parole violation report, **unredacted version** of his parole supervision case notes, his smartphone, certain pages of the browsing history from Youtube and Google, the results of the Forensic examination conducted by the state police as instructed by defendants Devlin and Russell, and all the documents showing the conditions he signed. The denial of access to certain documents and physical items violated due process and 120 CMR 303.21(1)(a), 303.22(6);

b. He was denied access to documents in permission of the defendants that was deemed confidential, e.g., remotecom emails, in violation of his due process rights and 120 CMR 303.21(2), 303.22(6)(b);

c. He was denied the opportunity to call witnesses and cross-examineradverse witnesses at his hearing in violation of his due process rights and 120 CMR 303.22(2), 303.23(2);

d. He was denied a fair and impartial hearing and decision, due to the refusal by Defendant Hurley, to recuse herself from his hearing, despite defendant Moroney, recusing herself, inviolation of his due process rights and 120 CMR 300.02(3);

e. He was denied due process rights 102 CMR 303.01(2) and the settlement agreement in Archer V. Wall, Suffolk Superior Court, Civil Action No. 1384CV04149, due defendants failing to consider less severe sanctions and alernatives to confinement; and,

f. He was denied a decision stating the grounds/reasons for revocation, the evidence for relied on for each charge, and reasons why incarceration was necessary, in violation of due process rights and 120 CMR 303.25(1).

-57-

282. Additionally, defendants relied on information not previously disclosed to Norris, to revoke his parole and deny reparole, and relied upon false information to revoke parole and deny reparole.

283. The defendants' actions deprived Norris of due process in violation of the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

284. As a direct and proximate result of the defendants unlawful actions, Norris, was deprived a fair hearing, was re-incarcerated on fabricated parole violations, and false information, he has suffered financially, has lost employment and educational opportunities, and suffered an negative impact on his sex offender registration status. Norris will continue to suffer harm until the parole board grants a new revocation hearing and the false information is removed from his parole file.

## COUNT 18
### Equal Protection
### 42 U.S.C. Section 1983
### (Defendant's Hurley and Dupre)

285. Paragraphs 1 through 283 are incorporated by reference as if fully set forth herein.

286. Defendants intentionally treated Norris, worse than other similarly-situated inmates, singling him out for unfavorable treatment without justification in a discriminatory manner.

287. Defendants revoked Norris's parole status and denied him reparole, based on internet restrictions not enforced on Nelson Perez, William Dotson, John Vance, Duke Bean, and based on Policy/conditions not in place when he was convicted, despite knowing that an inmate must be reviewed under the policy in place when he was convicted.

288. In subjecting Norris to discriminatory proceedings, and revoking parole status based on unconditional conditions, the defendants violated Norris's right to equal protection of the laws under the Fourteenth Amendment to the United States Constitution.

289. Norris is Afro-American, and upon information and belief avers that he treated differently due to an animus reason.

290. As a direct result, Norris has endured irreparable harm from these violations until the Parole Board holds a new hearing free of any differential and discriminatory treatment.

### COUNT 19
### Violation of Ex Post Facto Clause
### 42 U.S.C. Section 1983
### (Defendant's Durpe and Hurley)

291. Paragraphs 1 through 290 are incorporated by reference as if fully set forth herein.

292. Defendants revoked Norris's parole status and denied him reparole based on a retroactive policy/condition, e.g., sex offender special conditions policy. The policy/conditions were not in place when he was convicted.

293. The policy/conditions are burdensome and disadvantage him.

294. The defendants knew or should have known, that, revocation and denial of reparole of parole status under this new policy/conditions was unconstitutional due to the **Clark and Clay** matters.

-59-

295. As a direct result, Norris has suffered grave damages, described herein, and will continue to suffer harm until the parole board holds a new revocation hearing, that relys on the policy and law in place when he was convicted.

## COUNT 20
### Violation of First Amendment
#### internet Restrictions
42 U.S.C. Section 1983
(Defendant's Durpe and Hurley)

296. Paragraphs 1 through 294 are incorporated by reference as fully set forth herein.

297. Defendants punished and revoked Norris based on him engaging a protected activity, e.g., using the internet.

298. Additionally, defendants comments about him allegely watching anti-law enforcement videos, and rap videos reveal a racial bias.

299. Additionally, defendant Dupre's comment that the law enforcement videos were not legal, also shows a bias.

300. The decision in **Packingham**, and other Federal Court decision have established a protected right to use the internet for sex offenders and parolees.

301. Defendants knew or should have known, that, punishment, revocation and denial of reparole based on the parole violation of using Youtube, and communicating on XBOX live, was unlawful.

-60-

302. Defendant's violated Norris's First Amendment right under the United States Constitution, and Article 11 of the Massachusetts Declaration of Rights.

303. As a direct result, Norris has suffered grave damages, including the loss of liberty on a unconstitutional condition, was deprived a meaningful hearing, and will continue to suffer harm until the Parole Board holds a new revocation hearing, that recognizes his First Amendment Rights, and the violations are removed/expunged from his parole file.


### COUNT 21
### Due Process
### Withholding
### 42 U.S.C. Section 1983
### (Defendants's Moroney, Murphy, Book and Walsh)


304. Paragraphs 1 through 303 are incorporated by reference as if fully set forth herein.

305. Upon information and belief, defendants deliberately withheld evidence and documents from Norris, due to animus reasons.

306. Defendants knowingly withheld and concealed the following evidence and documents from Norris:

   a. The Petition to rescind his parole filed by Devlin;
   b. Access to his Smartphone before his Revocation hearing and Appeals were filed;
   c. All the RemoteCom emails;
   d. Both versions of the parole violation reports filed by Defendant Russell;
   e. The Surveillance footage from April 14, 2021;
   f. The alleged photographs of injuries;
   g. Copies of all the parole conditions he signed;

-61-

h. A copy of the unredacted version of the casenotes;
i. Records showing the racial data for revocation matters
   concerning defendants Devlin, Hurley and Dupre;
j. Any rule and/or condition showing, that, Norris, was
   prohibited from deleting texts; and,
k. Incident reports and casenotes regarding the arrest on
   April 14, 2021, and describing that Norris assaulted
   certain parole officers.

307. In addition, defendant Walsh, took steps to ensure that,
Norris, would not learn about the existence of two different
versions of the parole violation report, the Remotecom
emails, and alleged photographs of injuries.

308. Defendant Walsh, in bad faith mischaracterized the "Remote
Com" emails as being confidential, to conceal their exculpatory
nature.

309. Defendant Walsh, knew or should have known, that, pursuant to
120 CMR 303.21(1)(b)(2), 303.22(6), and White V. Bissionette,
1995 Mass. Super. Lexis 765, they were not confidential and were
required to be provided in at least summary form.

310. Additionally, defendant Walsh, attempted to mislead attorney
Koe, about the alleged photographs of injuries, denying they
existed and that the board members relied on them.

311. Defendants provided Norris, with most of the evidence and
documents approximately a year later, and after his revocation
hearing and appeals were filed & exhausted, e.g., some of
the Remotecom emails, access to his smartphone, signed
conditions he signed for in August/September of 2021, and
the alleged photographs of injuries.

312. Defendants are atill withholding documents from Norris,
including Five(5) pages of the RemoteCom emails, Conditions

-62-

he allegedly signed for on November 23, 2021, regarding
RemoteCom, the rule regarding deleting texts, the State
police forensic results, the racial revocation data,
surveillance footage, and incident reports describing
that he assaulted certain parole officers. .

313. The Defendants knew or should have known, that, they
had an obligation pursuant to **Morrissey**, **Doucette V. Mass.**
**Parole Board**, 86 Mass. App. Ct. 531 (2014), and 120 CMR 303.21(1)
(a); 303.21(2); 303.22(6) and 303.22(6)(b), to produce the
evidence and documents.

314. The defendants deliberate indifference and violation of
Norris's rights, caused and/or contributed to the introduction
of fabricated and false information, the parole board reelying
on false information to revoke his parole status and deny reparole,
and it deprived Norris the opportunity to present a meaningful
defense, evidence of bias, fabrication and information that
twould have impeached Defendants Devlin, Russell, and Lind,
credibility.

315. Their unlawful misconduct violated the Due Process Clause
of the United States Constitution.

316. As a proximate causation, Norris has suffered irrerapable
harm, including deprivation of a fair and meaningful revocation
hearing and Administrative Appeals, loss of liberty on false
information, pain and suffering, loss of wages, and he will
continue to suffer harm until the parole board holds a new
revocation hearing, and the parole board removes/expunges
false information from his parole file.


### COUNT 22
### Infliction of Emotional Distress
### (Defendant's Moroney, Murphy, Walsh and Book)

317. Paragrphs 1 through 316 are incorporated by reference as
fully set forth herein.

318. Defendants knew or should have known, that by deliberately concealing evidence and documents from Norris, that caused and/or contributed to his loss of liberty and deprivation of a meaningful revocation process, that their actions would cause emotional distress.

319. Norris, has endured and continues to suffer great emotional distress, including anxiety, depression, anger, struggles with sleeping, etc.

320. As a direct result, Norris has substained extreme emotional distress.

## COUNT 23
### Failure to Protect
### 42 U.S.C. Section 1983
### (Defendant's Moroeny, Keefe, Simons & Gomez)

321. Paragraphs 1 through 320 are incorporated by reference as if fully set forth herein.

322. The defendants knew or should have known, that, there was a foreseeble risk of harm and retaliation by defendants Devlin, and Russell, by way of the following:

a. Documents submitted by Attorney's Jeffrey Harris, and Adela Aprodu, revealing that Devlin, submitted false information to the parole board, sanctioned him for conduct, that wasn't made aware, that, it was prohibited conduct, and accused Norris of criminal behavior, that he did not do, revealing a bias;

b. The Petition to rescind his parole, and to increase his parole conditions;

c. The nature of Norris's lawsuit against Devlin;

d. The nature of the grievance against Devlin, and
Russell, expressing concerns of arbitrary mistreatment,
racial discrimination, punishment and fabrication for
behavior he didn't commit, and a fear of retaliation;

e. The emails from his wife and family complaining
about mistreatment; and,

f. The allegations raised by Ernest J. Dubose, and others.

323. Despite, the clear signs of foreseeable risk of harm,
and Norris's request to remove Russell and Devlin, from
his supervision, defendants showed callous indifference
towards his safety.

324. Defendants had a Constitutional duty to provide safety
to Norris, pursuant to the Eight and Fourteenth Amendments of
the United States Constitution, since he was under their
care and custody.

325. As a result of their deliction of duty and deliberate
indifference, defendants Devlin, Russell, and others were
able to retaliate and harm him via invading his private
emails and text messages, intentionally failed to inform him
about his parole conditions to revoke his parole,
fabricated parole violations and submitted false information
to the parole board, used excessive force against him and
attempted to cover it up with claims of injuries, and withheld
crucial evidence from him, e.g., his smartphone, etc. to
conceal their falsehoods.

326. As a direct result, Norris, has suffered and continues to
suffers the damages described herein.

COUNT 24
Supervisor Liability
42 U.S.C. Section  1983
(Defendant's Moroney and Keefe)

327. Paragraphs 1 through 326 are incorporated by reference as
if fully set forth herein.

328. Upon information and belief, the defendants are in charge
of creating, implementing and/or enforcing policies for the
Parole Board.

329. Defendants have failed to implement policies, that, would
protect Norris, and other parolees from arbitrary mistreatment,
racial discrimination, excessive force and fabrication. Norris,
avers proof comes by way of the following:

  a. Failure to implement and/or enforce a policy discouraging
fabrication and racial bias;

  b. Failure to implement and/or enforce a policy, that allows
parolees to file a complaint with the parole board, alleging
racial discrimination, fabrication, etc. A system that
will properly investigate and discipline viable claims;

  c. Failure to require parole officers to participate in
bias and cultural training;

  d. Create and implement a policy that ensures parole officers
are prohibited from creating their own parole conditions, and/or
rendering their own interpretations of parole conditions;

  e. Removing all parole conditions, that grants arbitrary
discretion to parole officers, whcih can lead to bias, abuse,
mistreatment and/or racial discrimination;

-66-

f. Create, implement and/or enforce a policy that ensures that parolees are properly notified of their parole conditions;

g. Create, and/or implement a policy that allows individuals the opportunity to file a complaint with the parole board, when employees fail to follow its own regulations and policies; and,

h. Implement a program, that requires parole officers wear a body camera when making a arrest, and installing camera's in all parole offices, to ensure that arrests are made in accordance with Board policy, and to prevent excessive force and fabrication. See Aghoghoubia V. Noel, 2020 U.S. Dist. Lexis 85542; (Surveillance footage showed parole officer lied about parolee resisting arrest, assaulting him and violating terms of parole); Bates V. Normand, 2021 U.S. Dist. Lexis 36722; (Surveillance video shows that parole officer lied about parolee resisting arrest and fabricated allegations of parole violations).

330. Furthermore, defendants were made aware of problems with defendant Devlin, and showed deliberate indifference to the improper conduct he was engaging in, e.g., racial discrimination, arbitrary mistreatment, targeting Norris, for revocation, creating his own rules of supervision/conditions of parole.

331. Due to their failure to create, implement and/or enforce meaningful policies, Norris was harmed.

332. Due to their failure to properly supervise, investigate and discipline defendant Devlin, Norris was harmed.

-67-

333. As a direct result, Norris, has experienced great pain, described herein.

## COUNT 25
### Puntive Damages

334. Paragraphs 1 through 333 are incorporated by reference as if fully set forth herein.

335. Upon information and belief, Defendant's Devlin, Russell, and Lind, fabricated parole violations and framed Norris, for revocation due to animus reasons.

336. Upon information and belief, Defendant's Russell, Lind, O'Dell, and Bedard, fabricated claims of resisting arrest and injuries, to cover-up the excessive force used, and the improper tactics used against Norris.

337. Upon information and belief, Defendant's Russell and O'Dell, assualted Norris, due to animus reasons, including in retaliation for his grievance, and lawsuit, he was watching anti-law enforcement videos and due to his race.

338. Upon information and belief, Defendant's Moroney, Murphy, Walsh, Devlin, and Russell, knowing and deliberately concealed evidence and documents from Norris.

339. Norris, avers, that, puntive damages is required for ergregious misconduct committed outside the scope of their duty, and committed to harm Norris.

## COUNT 26
## Declaratory Relief

340. Paragraphs 1 through 339 are incorporated by reference as if fully set forth herein. ,

341. The failure of the Parole board to respond to Mr. Norris's appeal to the full board was untimely and Constitutes a due process violation. Order and mandate the Parole Board to respond to all Appeals concerning Revocation within 30-60 days.

342. Order and Declare, the Parole board is enjoined from relying on the parole violations and May 26, 2021, revocation decision due to the following meritorious grounds:

   a. The Parole board failure to timely respond to his administrative appeal, that, has been pending for over Eight (8) months;

   b. Norris's pending Certorari Civil Action, in Worcester Superior Court, Norris V. Mass. Parole Board, Docket #2185CV01200, which argues, that, Norris, was deprived a hearing that comported with Morrissey V. Brewer, 408 U.S. 471 (1972), and the rights afforded by Parole Board Revocation regulations, 120 CMR 303. et seq., and his liberty was revoked on unconstitutional grounds;

   c. The substantial and compelling allegations that he was deprived a meaningful and fair hearing due to the introduction of false and fabricated information and parole violations, and deliberate withholding of documents and evidence, e.g., access to his smartphone, remotecom emails, photographs of alleged injuries, the second version of the parole violation report, unredacted version of the casenotes.

343. Declare and Mandate the Parole board, **must** establish
a complaint procedure, that, allows parolees of color to file
a complaint against a parole board employee regarding racial
bias, excessive force, and/or arbitrary mistreatment. Moreover,
that, the complaint **must** be investigated and answered within
Ten (10) days, and prohibits retaliation for filing a complaint.

344. Declare and mandate the Parole to ensure that parolees of
color receive equal protection and impartial review. The Parole
board **must** amend the revocation form from the **Archer** settlement,
to include the following:

   a. Cite the Race of the parolee facing revocation;

   b. The name of the parole officer and supervisor involved
in the Revocation matter;

   c. A notationn that the paroee was provided discovery, including
a summary of documents deemed confidential;

   d. A notation/section stating that the board members questioned
the parolee about whether he received notification of the
alleged parole violations and the board members were provided
documents to confirm receipt and acknowledgement;

   e. The board members **must** state the reasons for revocation
and evidence relied on for each parole violation, and the reasons
for denial of reparole;

   f. The board members **Must** inform the parolee of his right to
Appeal and Reconsideration;

   g. The parolee **must** be provided a copy of this form and
sign his name to the decision, and

h. Create a section on the form allowing the parolee to dispute whether he was provided all his revocation rights.

345. **Declare** and **mandate**, that, the Parole Board **must** install surveillance cameras in all regional offices and all arrests of parolees are to be recorded. This is to ensure, that, Parolees of color are arrested in a proper manner, and unnecessary force is not used against them.

346. **Declare** and **Mandate** the Parole board **must** remove all false information from his parole file to prevent a due process rights violation. **Remove/expunge** the following information from his parole file.

a. That David Lambert, increased his risk assessment;

b. He accessed a website to view nude photos;

c. He was searching and watching inappropriate and sexually suggestive music videos all day and night;

d. He had a third-party application on his phone, and Was deleting texts;

e. He resisted arrest and caused injuries to several parole officers; and,

f. He was using XBOX live and Youtube without permission

347. **Declare**, that, Defendant's Devlin, Lind, and Russell, submitted reports to the parole board with false information in bad faith, in violation of Massachusetts General Laws Chapter 268, section 6A. Refer this violation to the United States Attorney's Office and/or Massachusetts Attorney General Office for investigation and possible prosecution;

-71-

348. **Declare**, the Defendant's Russell and Devlin, accessing Norris's Text messages, emails, snswearing his telephone, and tampering with his smartphone and bringing it to his home in North Attleboro, without authorization, constitutes a violation of the Computer fraud and abuse act. Refer this matter to the United States Attorney's office for investigation and possible prosecution.

349. **Declare**, that, the ergregious conduct of Defendant's Gloriann Moroney, Pamela Murphy and Charles Walsh, all members of the Massachusetts Bar, violated the professional rules Conduct, e.g., 3.4(a), and 8.4(c)(d).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Kevin Norris, respectfully requests the Following Relief:

1. Award compensatory and special damages to Plaintiff against the Defendants.

2. Award Punitive damages to Plaintiff against the Defendants, Kevin Devlin, Fredrick Russell, Beth Lind, Sean O'Dell, Charles Walsh, Kevin Keefe, and Gloriann Moroeny.

3. Award reasonable attorneys fees and costs to the Plaintiff;

4. Award any other relief as this Court deems just and equitable.

## JURY DEMAND

Plaintiff hereby requests a trial by jury.

Respectfully Submitted
By,

_Kevin Munn_

Dated: April 25, 2022

30 Administration Road.
Bridgewater, MA 02324