UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

KEVIN NORRIS,                          *
                                       *
         Plaintiff,                    *
                                       *
         v.                            *      Civil Action 1:22-cv-10660-IT
                                       *
GLORIANN MORONEY, et al.,              *
                                       *
         Defendants.                   *
                                       *
                                       *

MEMORANDUM & ORDER

August 17, 2023

TALWANI, D.J.

         Plaintiff Kevin Norris, proceeding pro se, seeks declaratory and injunctive relief,

damages, and fees against Defendants Massachusetts Parole Board ("Parole Board"), Parole

Board chairperson Gloriann Moroney, Executive Director Kevin Keefe, Chief of Field

Supervision Tim Simons, and Deputy of Field Supervision Angelo Gomez, and parole officers

Kevin Devlin, Frederick Russell, Sean O'Dell, Beth Lind, and Francis Bedard for civil rights,

statutory, and state law claims related to his parole revocation. Am. Compl. [Doc. No. 73]. Now

pending before the court are Defendants' Motion to Dismiss [Doc. No. 85], and Norris's

Opposition Motion [Doc. No. 91], Motion for Court Order [Doc. No. 105], and Revised Motion

for Judgment on the Pleadings [Doc. No. 109].

I.       **Factual Background**

         A.  *As Alleged in the Amended Complaint [Doc. No. 73]*

         In July 1992, Norris was convicted of several counts of armed robbery and aggravated

rape and sentenced to concurrent terms ranging from 25 to 40 years. Am. Compl. ¶ 11 [Doc. No.

73]. In February 2018, Norris was granted parole. Id. at ¶ 12.

In June 2019, parole supervisor Devlin arrested Norris for violating conditions of his parole. Id. at ¶ 13. During the arrest, Devlin told Norris that "the parole board should never had let you out for raping that white girl." Id. The Parole Board dismissed almost all of the alleged violations, and denied parole based on what Norris asserts were "false and fabricated allegations averred in a supervision report written by Defendant Devlin." Id. at ¶ 14. In response, Norris initiated legal action against Devlin and other parole officers. Id. at ¶ 15.

In July 2020, Norris was granted parole again. Id. at ¶ 16. Shortly before Norris was released, Devlin petitioned to rescind Norris's parole, but the Parole Board denied the petition. Id. at ¶ 17. Devlin then filed another petition to add further conditions of parole without providing any new information that would warrant a modification. Id. at ¶¶ 18-19. Devlin also instructed the Parole Board victim service coordinator to persuade Norris's wife to retract her agreement to be Norris's home sponsor. Id. at ¶¶ 20-22. As a result of these actions, Norris spent an additional 3-4 weeks in prison. Id. at ¶ 23.

Also before he was released, Norris met with assistant parole officer Lind and another officer who went over Norris' specific conditions of parole and the Supervision Manual for Parolees. Id. at ¶¶ 25-28. Lind informed Norris that he could not use the internet without permission and was prohibited from watching pornographic movies. Id. at ¶¶ 28-29. On August 31, 2020, Norris was again released on parole. Id. at ¶ 24.

On or about September 4, 2020, Norris met with Lind and parole officer Russell, and again went over the "Sex A Conditions." Id. at ¶ 32. Lind informed Norris that he could not have a smartphone. Id. Norris requested the return of his approved flip phone, which was taken from him during the last arrest, and was told that Devlin would give it to him soon. Id. at ¶ 34.

During a September 2020 home visit, Russell gave Norris a warning ticket for playing online video games, despite Norris informing Russell that Norris's former parole officers had approved the video games and that the internet search function on the console was disabled and password protected. Id. at ¶¶ 35-36.[1] Norris requested access to the internet for school, counseling, banking, religious purposes, and legal services. Id. at ¶ 37. Russell informed him that internet access was prohibited and told Norris that he could write to the Parole Board for permission.[2] Id. at ¶¶ 38-39.

In October 2020, Norris and his wife tried to reach Russell to request internet access to watch a training video for a new job. Id. at ¶¶ 41-42. Russell did not respond, but because the training was time sensitive, Norris watched the video on his wife's tablet in front of her and her mother. Id. at ¶¶ 44-45. The next day, Russell issued Norris a warning ticket for accessing the internet. Id. at ¶ 46. Norris, his wife, and his mother-in-law contacted Parole Board Chairperson Moroney and other officials about the situation. Id. at ¶ 47. Shortly thereafter, Russell informed Norris that the Parole Board voted to allow Norris to use a computer for work purposes if he installed the monitoring service RemoteCom. Id. at ¶ 49. Plaintiff again requested access to the internet for legal research, court business, religious purposes, sex offender and mental health counseling, and marriage counseling, but Devlin again told him that he could not use the internet without permission of the Board. Id. at ¶ 50.[3] Norris filed a grievance against Devlin and Russell,

---

[1] Russell subsequently informed Norris that he could play video games if the console did not connect to the internet. Id. at ¶ 40.

[2] Norris alleges that similarly situated White parolees were granted access to internet and/or a smartphone. Id. at ¶ 135(c).

[3] Norris contends that Russell had authority under the Board's "Sex Offender Condition Policy" to authorize such use without further Board permission. Id. ¶ 50 n.1.

which was forwarded to Moroney, Keefe, Simons, and Gomez. Id. at ¶¶ 53-54. Keefe and

Gomez conducted an investigation, but did not interview Norris, his wife, or his therapist, or

produce relevant documents. Id. at ¶ 55.

In late October 2020, Norris complained to Keefe about Russell and Devlin. Id. at ¶ 57.

Keefe stated that Norris "should be allowed to access a computer for certain things like

counseling, legal research, banking, etc.," and agreed to speak to Russell and Devlin about the

restrictions. Id. at ¶ 57. Shortly thereafter, Norris received another warning ticket, submitted

another grievance to Moroney against Russell and Devlin, and sought new parole supervision. Id.

at ¶ 58.

In December 2020, Devlin submitted an adverse letter to the Sex Offender Registry

Board in which he stated that RemoteCom was only to monitor Norris's browsing history.[4] Id. at

¶ 59. That same month, Norris sought a preliminary injunction in Worcester Superior Court

based on his above-mentioned concerns. Id. at ¶ 60. In January 2021, the Parole Board responded

to Norris's motion, stating that it would modify Norris's conditions, and assuring Norris that

RemoteCom would only monitor his browsing history. Id. at ¶ 61. Shortly thereafter, the Parole

Board voted to modify Norris's conditions to allow him to obtain a smartphone for limited

purposes. Id. at ¶ 62.

---

[4] Norris contends that Devlin, Russell, and others repeatedly—and falsely—told him that
RemoteCom was limited in its internet supervision capabilities. Am. Compl. at ¶¶ 59, 61, 64-66,
73-74. However, because the court finds that the parole officers had authorization to broadly
supervise Norris's internet usage, see infra Section IV.A.3, the court has shortened the discussion
of these allegations.

On March 31, 2021, Norris's former lawyer filed a motion for reconsideration with the Parole Board to seek removal of RemoteCom, certain internet restriction, GPS monitoring, marriage counseling, and polygraph examination conditions. Id. at ¶ 76.

On April 14, 2021, Russell instructed Norris to go to the parole office after work. Id. at ¶ 77. Once he arrived, Russell instructed Norris to go to the conference room. Id. at ¶ 78. Norris alleges that Russell then "assaulted and hit [Norris] from behind" and pinned Norris's arms above his shoulders. Id. at ¶ 79. Norris experienced a panic attack, had difficulty breathing, and attempted to fall to the ground as Russell continued to pull Norris's arms. Id. at ¶¶ 82-83. Norris alleges further that Officers O'Dell and Bedard then appeared from another office and "began to also aggressively manhandle him by . . . grabbing onto his neck and arms." Id. at ¶ 83. O'Dell allegedly punched Norris in the stomach, and Bedard told him that he was under arrest and to not resist. Id. at ¶ 84. Norris briefly lost consciousness. Id. at ¶ 85. Norris was then placed in handcuffs and his requests for his asthma inhaler and anxiety medication were denied. Id. at ¶ 88. Only Bedard offered Norris water and instructed Norris to try to keep breathing. Id. at ¶ 89. After an ambulance was called, Lind, who had been training Norris when he was directed into the conference room, and O'Dell searched for the anxiety medication and asthma inhaler, but did not retrieve either. Id. at ¶¶ 79, 88, 90. Norris was then transported to UMass Memorial Hospital for treatment. Id. at ¶ 91.

On April 16, 2021, Russell, Devlin, and Lind submitted a parole violation report alleging multiple parole violations, including resisting arrest on April 14, 2021, unauthorized use of fingerprint-protected smartphone, unauthorized deletion of text messages, use of a video game console and YouTube, unauthorized internet searches, threatening text messages, and causing injuries during arrest. Id. at ¶ 102. On April 23, 2021, Devlin and Russell applied for a search

warrant of Norris's smartphone in Worcester District Court, presenting a search warrant affidavit with "averred false and fabricated information." Id. at ¶¶ 106-07.

On April 26, 2021, the hearing officer recommended a provisional revocation of parole. Id. at ¶¶ 109-10. On May 6 and 17, 2021, Norris's attorney requested access to documents and the smartphone from the Parole Board in preparation for the final revocation hearing, but full access was not provided. Id. at ¶¶ 111, 113. Norris's parole was revoked at a final revocation hearing on May 26, 2021. Id. at ¶ 112. Norris appealed, alleging that he was deprived of a "fair and meaningful" revocation hearing; his appeal was denied on July 16, 2021. Id. at ¶¶ 113-14.

On August 19, 2021, after several previous requests, Norris's counsel retrieved Norris's smartphone from the parole office. Id. at ¶¶ 104, 116-18. Review of the phone disclosed "highly germane and excul[p]atory evidence" that conflicted with the violation report, including that his phone was not fingerprint protected and that the phone was "pinged" in North Attleboro on April 27, 2021, at 2:16 a.m. Id. at ¶ 119. Norris also retained the services of a digital forensic expert to review the phone. Id. at ¶¶ 120-21. On November 8, 2021, Norris filed a complaint in Worcester Superior Court against the Parole Board seeking review of his parole revocation. Id. at ¶ 122; Norris v. Mass. Parole Board, No. 2185cv01200 (Mass. Sup. Ct. Nov. 8, 2021).[5]

   B.  As Supplemented by the Parties

On April 20, 2023, the Parole Board held a parole hearing after being ordered to do by the Worcester Superior Court. Aff. of Matthew J. Koes ¶ 4 [Doc. No. 105-2]. Norris's counsel requested the presence of certain Parole Board staff for the hearing, but these individuals were

---

[5] Norris states that he obtained certain documents during discovery in the state court action including (1) conflicting versions of the parole violation reports, (2) pictures of Defendants' injuries allegedly incurred during the arrest, and (3) allegedly falsified case notes from Norris's sex offender counselor. Am. Compl. ¶¶ 123-27 [Doc. No. 73].

not made available for cross examination. Id. Norris and his Counsel also requested certain documents for the hearing, but these were not provided to them. Id. at ¶¶ 4, 6; Aff. of Kevin Norris ¶¶ 2-4 [Doc. No. 105-1].

The Parole Board issued a decision affirming Norris's initial revocation but granting Norris re-parole. See Supp. Mem. Ex. A (Record of Decision) [Doc. No. 104-1].

## II.   Procedural Background

On May 2, 2022, Norris filed his initial complaint in this court. Compl. [Doc. No. 1]. The court dismissed all claims for damages against Moroney and two other parole board members based on the doctrine of absolute immunity;[6] dismissed without prejudice Norris's claim under the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, because he had not alleged that he suffered any compensable damage or loss as defined by the statute; and allowed summonses to issue. Mem. & Order 6-7 [Doc. No. 10].

On November 21, 2022, Norris filed his Amended Complaint [Doc. No. 73], which excluded certain previously named Parole Board officers, added new claims and factual allegations, and added the Parole Board as a Defendant. Defendants filed the pending partial Motion to Dismiss [Doc. No. 85], and Norris filed his Opposition Motion [Doc. No. 91], opposing Defendants' motion and requesting leave to amend.

After the April 2023 parole hearing, Defendants filed a Supplemental Memorandum [Doc. No. 104], and Norris filed his Motion for Court Order [Doc. No. 105] and a Revised Motion for Judgment on the Pleadings [Doc. No. 109].

---

[6] Moroney and other parole board members remained parties to the action because Norris sought injunctive relief. Mem. & Order 6 [Doc. No. 10].

### III.    Legal Standards

*A. Lack of Jurisdiction*

Rule 12(b)(1) is "[t]he proper vehicle for challenging a court's subject-matter jurisdiction." Valentin v. Hosp. Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001). "[F]ederal jurisdiction is never presumed." Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998). The party asserting jurisdiction has the burden of demonstrating the existence of federal jurisdiction. Id. A court should treat all well-pleaded facts as true and provide the plaintiff the benefit of all reasonable inferences. Fothergill v. United States, 566 F.3d 248, 251 (1st Cir. 2009). Dismissal is appropriate only when the facts alleged in the complaint, taken as true, do not support a finding of federal subject matter jurisdiction. Id.

"Sovereign immunity is jurisdictional in nature," FDIC v. Meyer, 510 U.S. 471, 475 (1994), and so is properly raised under Federal Rule of Civil Procedure 12(b)(1), Valentin 254 F.3d at 362-63; Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995).

*B. Failure to State a Claim*

In evaluating a motion to dismiss for failure to state a claim, the court "assum[es] the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . . [f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 555 (internal citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). In addition, "an adequate complaint must include

not only a plausible claim but also a plausible defendant." <u>Penalbert-Rosa v. Fortuno-Burset</u>, 631 F.3d 592, 594 (1st Cir. 2011).

In general, a complaint filed <u>pro se</u> is "liberally construed" and held to "less stringent standards than formal pleadings drafted by lawyers." <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) (internal citation omitted). That does not mean that <u>pro se</u> plaintiffs need not plead facts sufficient to state a claim, but it does afford them some leniency when facing a motion to dismiss. <u>Ferranti v. Moran</u>, 618 F.2d 888, 890 (1st Cir. 1980).

*C.   Immunity*

Federal Rule of Civil Procedure 12(b)(6) is the proper vehicle for challenging claims based on both absolute and qualified immunity. <u>Imbler v. Pachtman</u>, 424 U.S. 409, 431 (1976) (affirming 12(b)(6) dismissal based on absolute immunity); <u>Guzman-Rivera v. Lucena-Zabala</u>, 642 F.3d 92, 99 (1st Cir. 2011) (same); <u>Eldredge v. Town of Falmouth</u>, 662 F.3d 100, 104 (1st Cir. 2011) (affirming 12(b)(6) dismissal for defendant entitled to qualified immunity); <u>MacDonald v. Town of Eastham</u>, 745 F.3d 8, 10 (1st Cir. 2014) (same).

Qualified immunity is an "*immunity from suit* rather than a mere defense to liability." <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985) (emphasis in original). The Supreme Court has therefore "repeatedly . . . stressed the importance of resolving immunity questions at the earliest possible stage in litigation." <u>Hunter v. Bryant</u>, 502 U.S. 224, 227 (1991) (per curiam). A "driving force" behind the doctrine is to "ensure that 'insubstantial claims against government officials [will] be resolved prior to discovery.'" <u>Pearson v. Callahan,</u> 555 U.S. 223, 231 (2009) (quoting <u>Anderson v. Creighton</u>, 483 U.S. 635, 640 n.2 (1987)); <u>see also</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 685 (2009).

"[Q]ualified immunity shields government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known.'" Matalon v. Hynnes, 806 F.3d 627, 632-33 (1st

Cir. 2015) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).[7] The court employs a

"three-part test when determining if a public official is entitled to qualified immunity: (1)

whether plaintiff's allegations, if true, establish a constitutional violation; (2) whether that right

was clearly established at the time of the alleged violation; and (3) whether a similarly situated

reasonable official would have understood that the challenged action violated the constitutional

right at issue." Mihos v. Swift, 358 F.3d 91, 102 (1st Cir. 2004).

     "To avoid a qualified-immunity defense, [the plaintiff] must show (1) that [the officer]

infracted his federal rights and (2) that these rights were so clearly established that a reasonable

officer should have known how they applied to the situation at hand." Belsito Commc'ns Inc. v.

Decker, 845 F.3d 13, 23 (1st Cir. 2016). "If either of the two prongs is not met—i.e., if the facts

do not show a constitutional violation or the right in question was not clearly established—the

officer is immune. Either prong may be addressed first, depending on 'the circumstances in the

particular case at hand.'" Marrero-Méndez v. Calixto-Rodríguez, 830 F.3d 38, 43 (1st Cir. 2016)

(quoting Pearson, 555 U.S at 236).

     The "clearly established" element contains two sub-parts. See Maldonado v. Fontanes,

568 F.3d 263, 269 (1st Cir. 2009). "The first sub-part requires the plaintiff to identify either

'controlling authority' or a 'consensus of cases of persuasive authority' sufficient to send a clear

signal to a reasonable official that certain conduct falls short of the constitutional norm." Alfano

v. Lynch, 847 F.3d 71, 75 (1st Cir. 2017) (quoting Wilson v. Layne, 526 U.S. 603, 617 (1999)).

---

[7] The First Circuit has applied the doctrine of qualified immunity to parole officers. Crooker v.
Metallo, 5 F.3d 583, 585 (1st Cir. 1993).

"The second sub-part asks whether an objectively reasonable official in the defendant's position would have known that his [or her] conduct violated that rule of law." Id.

## IV.    Discussion

Defendants' Motion to Dismiss [Doc. No. 85] seeks to dismiss the Amended Complaint [Doc. No. 85]. Norris's Revised Motion for Judgment on the Pleadings [Doc. No. 109] and Motion for Court Order [Doc. No. 105] seek judgment in Norris's favor as to Counts 7 and 16 of the Amended Complaint [Doc. No. 73]. The court addresses these motions together, proceeding by claim (or group of claims).[8] The court addresses at the end Norris's request to amend his complaint.

### A.    Claims Against Parole Officers in their Individual Capacities

#### 1.    First Amendment Retaliation Claims against Devlin, Russell, and Lind

In Counts 1, 2, and 3, Norris alleges violations of his First Amendment rights to freedom of speech and free exercise of religion. Defendants move to dismiss on the grounds that Norris has not alleged a legally cognizable injury, or that his speech was a motivating factor for the parole restrictions. Mot. To Dismiss Mem. 23-24 [Doc. No. 86]. Defendants assert further that even if Norris states a plausible claim to relief, they are entitled to qualified immunity because they did not violate clearly established law. Mot. to Dismiss Mem. 44 [Doc. No. 86].

In Count 1, Norris alleges that Devlin retaliated against Norris for filing a lawsuit and grievances against Devlin. To state a First Amendment retaliation claim under § 1983, a

_____

[8] Norris's Motion for Court Order [Doc. No. 105] also seeks to subpoena his former attorney and requests a hearing. The subpoena request is premature where the court has assumed the facts alleged in the Amended Complaint [Doc. No. 73] and as supplemented by Norris, see Aff. of Kevin Norris ¶¶ 2-4 [Doc. No. 105-1], are correct for adjudicating the pending Motion to Dismiss [Doc. No. 85]. The request for a hearing is moot where the court held a hearing on all pending motions on June 7, 2023.

"[p]laintiff must demonstrate that (1) the speech was constitutionally protected; (2) [he] suffered an adverse . . . decision; and (3) there was a causal connection between the speech and the adverse . . . determination against [him], so that it can be said that [his] speech was a motivating factor in the determination." Shaheed-Muhammad v. Dipaolo, 393 F. Supp. 2d 80, 105 (D. Mass. 2005) (internal citation omitted).

Norris's allegations state such a claim. Norris "undoubtedly has a First Amendment right 'to petition the government for the redress of grievances, and prison officials may not retaliate against prisoners for the exercise of that right.'" Shabazz v. Cole, 69 F. Supp. 2d 177, 197 (D. Mass. 1999) (quoting Colon v. Coughlin, 58 F.3d 865, 872 (2d Cir.1995). Norris sufficiently alleges that he (1) engaged in protected conduct by filing grievances and petitioning the court, and (2) was subject to Devlin's adverse actions of increasing Norris's conditions of parole and attempting to revoke his parole. As to causality, "[o]n a motion to dismiss for failure to state a claim, it is appropriate to infer a retaliatory state of mind from circumstantial evidence," including the chronology of the events. Id. Norris sufficiently alleges causality through the following chain of events: Norris initiated proceedings against Devlin in 2019, and Devlin then filed allegedly unwarranted violations reports and took other action against Norris in 2020, leading to Norris's revocation and additional time in prison. Accordingly, Norris has stated a claim against Devlin under Count 1.

Further, Devlin is not entitled to qualified immunity for Count 1. A reasonable parole officer in Devlin's situation would have known that retaliation based on grievances or litigation against the officer would violate a constitutionally protected right. See Shabazz, 69 F. Supp. 2d at 207 (prison official was not entitled to qualified immunity on a motion to dismiss because "[a]

reasonable prison official would understand that filing the disciplinary charge … because [plaintiff] filed a grievance would violate [plaintiff's] clearly established constitutional rights").

In Count 2, Norris alleges that Russell, Lind, and Devlin prohibited Norris's internet use in bad faith and in violation of Norris's rights under Packingham v. North Carolina, 582 U.S. 98 (2017).[9] In Packingham, the Supreme Court found that a statute making it a felony for a registered sex offender to access certain websites violated the First Amendment. 582 U.S. at 109 (holding that "the State may not enact this complete bar to the exercise of First Amendment rights on websites integral to the fabric of our modern society and culture"). Courts are split as to whether Packingham extends to conditions for those still under supervision. Compare Yunus v. Robinson, 2019 WL 168544, at *16 (S.D.N.Y. Jan. 11, 2019) (applying Packingham to parole conditions) with Stock v. Uttecht, 2021 WL 5016140, at *6 (W.D. Wash. June 9, 2021), report and recommendation adopted, 2021 WL 5014089 (W.D. Wash. Oct. 28, 2021) (declining to apply Packingham to community custody conditions). Neither party has pointed to, and the court has not found, a First Circuit case interpreting the reach of Packingham to parole conditions.

As a result of this unsettled law, Russell, Lind, and Devlin are entitled to qualified immunity. At the time of Norris's parole, it was not clearly established that an internet restriction as a condition of parole was prohibited. See Stock, 2021 WL 5016140 at *7 (holding that defendants were entitled to qualified immunity where the scope of Packingham was not clearly established as it applied to conditions of supervised release). Accordingly, Russell, Lind, and Devlin are entitled to qualified immunity.

---

[9] Norris also points to rights under United States v. Hinkel, 837 F.3d 111 (1st Cir. 2016). Although the First Circuit cautioned there against broad restrictions on internet access, the court was considering requirements for supervised release under federal law, not supervision under state law or limitations imposed by the First Amendment. Id. at 125-26.

In Count 3, Norris alleges that Russell, Lind and Devlin's imposition of internet restrictions interfered with his ability to attend online religious services during the pandemic. To state a claim for violation of the right to free exercise of religion, a plaintiff must allege that a defendant personally and unjustifiably placed a substantial burden on his religious practices. See Hernandez v. Comm'r, 490 U.S. 680, 699 (1989). A substantial burden "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Thomas v. Review Bd., 450 U.S. 707, 717-18 (1981). Here, Norris has not sufficiently alleged a substantial burden. Norris does not allege that he was unable to exercise his religion through means other than the internet during his initial period of parole. And by early 2021, the Parole Board voted to modify Norris's conditions to *allow* him limited internet use, including for religious purposes. Am. Compl. ¶ 62 [Doc. No. 73]. Accordingly, Norris has not stated a claim to relief under Count 3.

Accordingly, Defendants' Motion to Dismiss [Doc. No. 85] is DENIED as to Count 1 and GRANTED as to Counts 2 and 3.

2.    Excessive Force and Assault and Battery Claims Against Russell and O'Dell

In Count 9, Norris alleges that Russell and O'Dell used excessive and unnecessary force against him during the April 14, 2021 arrest. In Count 10, Norris charges Russell and O'Dell with assault and battery in connection with that arrest.

Although Defendants' Motion to Dismiss [Doc. No. 85] seeks dismissal of the First Amended Complaint [Doc. No. 73] in its entirety, Defendants' Memorandum in Support [Doc. No. [86] does not mention these two counts. Accordingly, the motion is DENIED as to Counts 9 and 10.

3.    Racial Discrimination and Equal Protection Claims Against Devlin, Russell, Lind, and O'Dell

14

In Counts 4, 5, and 11, Norris brings claims under the Fourteenth Amendment. In Count 4, he alleges that Devlin targeted Norris due to his race and the racial dynamics of Norris's underlying offense. In Count 5, he alleges that Russell, Lind, and Devlin treated Norris worse than other similarly situated parolees and subjected Norris to arbitrary treatment. In Count 11, Norris alleges that Russell and O'Dell intentionally singled him out for unfavorable treatment by using unreasonable force against him during arrest. Defendants move for dismissal on the grounds that Norris relies on "bare assertions" of disparate treatment and does not allege how other similarly-situated parolees were treated. Mot. to Dismiss Mem. 26 [Doc. No. 86].

"An equal protection claim requires 'proof that (1) the person, compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" Freeman v. Town of Hudson, 714 F.3d 29, 38 (1st Cir. 2013) (internal quotation omitted). Although the "formula for determining whether individuals or entities are 'similarly situated' . . . is not always susceptible to precise demarcation," the "test is whether a prudent person, looking objectively at the incidents, would think them roughly equivalent and the protagonists similarly situated." Aponte-Ramos v. Álvarez-Rubio, 783 F.3d 905, 909 (1st Cir. 2015) (internal quotations omitted). "In other words, apples should be compared to apples." Id. (internal quotation omitted). At the motion to dismiss stage, conclusory statements that parties are "similarly situated to and treated differently from unspecified 'other [persons]' [are] insufficient" to state a claim. Freeman,714 F.3d at 39-40.

Here, Norris has not sufficiently alleged that Devlin, Russell, Lind, or O'Dell intentionally discriminated against him on the basis of race. Norris alleges statements by Devlin

that indicate racial animus, including that Devlin stated that Norris should not have been released on parole for "raping that white girl," during an arrest in June 2019, see Am. Compl. ¶ 13 [Doc. No. 73], and asserts that Devlin has "targeted other blacks"[10] with similar underlying offense, id. at ¶ 135. Norris also alleges that White parolees were not subject to the same internet restrictions, see id., were arrested without force, see id. at ¶ 205, and that Russell and Lind "singl[ed] him out for unfavorable treatment," id. at ¶ 173. But Norris does not allege how these parolees were similarly situated (e.g., by having the same underlying offense).

Accordingly, Defendants' Motion to Dismiss [Doc. No. 85] is GRANTED as to Counts 4, 5, and 11.

4.      Massachusetts Civil Rights Claims against Russell, Devlin and O'Dell

In Counts 6 and 13, Norris alleges violations of the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12 § 11I.

In Count 6, Norris contends that Russell and Devlin misrepresented that RemoteCom would only monitor his browsing history in order to install the application on his smartphone. Defendants move for dismissal on the grounds that parolees have diminished privacy rights, and even if Norris's protected rights were violated, the violation was not accomplished by threats, intimidation, or coercion. Mot. to Dismiss Mem. 27 [Doc. No. 86].

To state a claim under the MCRA, a plaintiff must show a deprivation of a federally or state-protected right "by threats, intimidation or coercion." Thomas v. Harrington, 909 F.3d 483, 492 (1st Cir. 2018). "'Threat' in this context involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." Planned Parenthood League of Mass.,

---

[10] Norris identifies three other parolees by name. Am. Compl. ¶ 170 [Doc. No. 73].

Inc. v. Blake, 417 Mass. 467, 474, 631 N.E.2d 985 (1994). "Intimidation," meanwhile, "involves putting [someone] in fear for the purpose of compelling or deterring conduct." Id. Finally, "coercion" is "the use of physical or moral force to compel [another] to act or assent." Freeman v. Planning Bd. of W. Boylston, 419 Mass. 548, 565, 646 N.E.2d 139 (1995). The "threats, intimidation or coercion" requirement "was specifically intended to limit liability under the Act." Id. at 565-66.

Parolees have reduced expectations of privacy, see Samson v. California, 547 U.S. 843, 850, (2006), because "[t]he parole system reflects the need for enhanced supervision," Com. v. Moore, 473 Mass. 481, 486, 43 N.E.3d 294 (2016). However, even if Norris had a protected interest in unmonitored internet use, the Amended Complaint [Doc. No. 73] does not plausibly allege that Russell or Devlin used threats, intimidation, or coercion against Norris to install RemoteCom. There are no facts to suggest that Russell or Devlin made Norris fearful or used force to coerce Norris to install the program. Further, Russell qualified his statement that RemoteCom would only monitor browsing history, noting that he would have to verify his understanding. Am. Compl. ¶ 65 [Doc. No. 73]. Accordingly, Norris has failed to state a claim under Count 6.[11]

In Count 13, Norris claims that Russell and O'Dell used unreasonable force during the arrest on April 14, 2021. Norris has plausibly alleged an excessive force claim. "A claim that law-enforcement officers used excessive force to effect a seizure is governed by the Fourth Amendment's 'reasonableness' standard." Plumhoff v. Rickard, 572 U.S. 765, 774 (2014); see Diaz v. Devlin, 229 F. Supp. 3d 101, 112 (D. Mass. 2017) (other than the requirement that the

---

[11] Where the court finds that Norris has failed to state a claim as to Count 6, the court does not address Defendants' other arguments for dismissal.

"interference or attempted interference was by threats, intimidation, or coercion," "the MCRA is generally interpreted coextensively with Section 1983"). "[T]he question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Graham v. Connor, 490 U.S. 386, 397 (1989).

Norris alleges that Russell hit him from behind without warning, causing him to fall to the ground, and grabbed Norris's arms "in a very aggressive manner." Am. Compl. ¶ 79 [Doc. No. 73]. Norris alleges further that when he experienced a panic attack, Russell continued to pull Norris's arms, and O'Dell grabbed onto his neck and arms and punched him in the stomach. Id. at ¶¶ 83-84. Norris does not allege that he was actively resisting or attempting to flee; therefore, he has sufficiently alleged a claim for excessive force under the Massachusetts Civil Right Acts. See Raiche v. Pietroski, 623 F.3d 30, 36-37 (1st Cir. 2010). Further, Russell and O'Dell are not entitled to qualified immunity on their motion to dismiss where "it was clearly established at the time of the incident that the Fourth Amendment prohibits a police officer from utilizing excessive force in making an arrest." See Cocroft v. Smith, 2013 WL 1336304, at *6 (D. Mass. Mar. 29, 2013).

Accordingly, Defendants' Motion to Dismiss [Doc. No. 85] is GRANTED as to Count 6 and DENIED as to Count 13.

5.      Due Process Claims Against Russell, Lind, Devlin, Bedard and O'Dell

Norris asserts several due process violations based on alleged fabrication and fraudulent concealment. In Count 7, he alleges that Russell, Lind, and Devlin intentionally failed to inform him of his parole conditions in violation of the Fourteenth Amendment and Mass. Gen. Laws. c. 127, § 131. In Count 16, Norris alleges that Russell, Lind, and Devlin used fabricated evidence

in a parole violation report. In Count 17, Norris alleges that Russell, Lind, Bedard, and O'Dell submitted fabricated photos of injuries purportedly incurred during the April 14, 2021 arrest. In Count 20, Norris alleges that Russell, Lind, and Devlin concealed documents.

Norris moves for judgment on Counts 7 and 16 based on the dismissal of certain parole violations at the April 20, 2023 revocation hearing. Rev. Mot. for Judgment on the Pleadings [Doc. No. 109]. However, Norris does not allege that the dismissal of some of the parole violations included any concession by Defendants that they failed to inform Norris of his parole violations, or that they fabricated evidence. Accordingly, where judgment on the pleadings is only proper "if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment," Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006), and no such facts were presented to the court that clearly establish Defendants' wrongdoing as to Counts 7 and 16, Norris's Revised Motion for Judgment on the Pleadings [Doc. No. 109] is DENIED.

Defendants argue that Norris was afforded due process where he received several warning tickets and a hearing prior to the revocation of parole. Mot. to Dismiss Mem. 29 [Doc. No. 86]. Further, Defendants argue that Norris's § 1983 claims based on fabrication and concealment of evidence are barred by the favorable termination requirement under Heck v. Humphrey, 512 U.S. 477 (1994). Id. at 29-30. Norris argues that favorable termination does not apply because he only objects to the absence of a hearing that comports with his constitutional rights. Opp. to Mot. to Dismiss 18-19 [Doc. No. 92]; Resp. to Supp. Mem. [Doc. No. 111].[12]

_____

[12] Following Norris's release, Defendants also argue that his due process claims are moot. See Supp. Mem. 3-4 [Doc No. 104]. Mootness review is grounded in "[t]he case or controversy requirement [and] ensures that courts do not render advisory opinions." Overseas Military Sales Corp. v. Giralt-Armada, 503 F.3d 12, 16-17 (1st Cir. 2007). "But as long as the parties have a

"[I]n order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Heck v. Humphrey, 512 U.S. 477, 487 (1994). The favorable termination requirement applies to parole hearings, because "[a] favorable decision in the § 1983 proceeding would necessarily call into question the validity of the state's decree revoking [a plaintiff's] parole and ordering him back to prison." White v. Gittens, 121 F.3d 803, 807 (1st Cir. 1997).

Here, Norris's alleges fabrication, suppression, and concealment of evidence. But those are claims which "essentially challenge[] the validity of the underlying conviction." See Rodriguez v. Carhart, 73 F.3d 355 (Table), 1996 WL 7966 at *1 (1st Cir. 1996). And Norris cannot recover "damages attributable to an unconstitutional conviction or sentence . . . until the conviction or sentence has been invalidated." See Heck, 512 U.S. at 489-90.

The relief Norris now seeks, namely removal of the allegedly fabricated reports from his record and a new hearing, see Am. Compl. ¶ 187 [Doc. No 73], still challenges the underlying validity of his confinement. See Bruyette v. Patrick, 2015 WL 5458276, at *3 (D. Mass. Sept. 16, 2015). Granting parole only provides interim relief where Norris's administrative challenges to

---

concrete interest, however small, in the outcome of the litigation, the case is not moot." Ellis v. Bhd. Of Ry., Airline & S.S. Clerks, Freight Handlers, Express & Station Emps., 466 U.S. 435, 442 (1984). Moreover, "[t]he burden of establishing mootness rests squarely on the party raising it, and '[t]he burden is a heavy one.'" Mangual v. Rotger-Sabat, 317 F.3d 45, 60 (1st Cir. 2003) (quoting United States v. W.T. Grant Co., 345 U.S. 629, 633 (1953)). Where Norris asserts that the hearing that occurred was constitutionally inadequate, and where he seeks relief beyond a new hearing, including damages and injunctive relief, the claim is not moot.

the revocation remain pending in Worcester Superior Court. Norris's reliance on <u>Limone v.</u>

<u>United States</u>, 271 F. Supp. 2d 345, 361 (D. Mass. 2003), aff'd in part, remanded in part sub

nom. <u>Limone v. Condon</u>, 372 F.3d 39 (1st Cir. 2004), is misplaced. First, the First Circuit

expressly declined to reach the issue of favorable termination, as it was presented on

interlocutory appeal. <u>Limone,</u> 372 F.3d at 50-51. And second, Norris does not allege that

Defendants concealed evidence that prevented him from knowing that he had a potentially viable

claim or from seeking post-conviction remedies, which was a critical fact in Limone. <u>See id.</u> at

49-50. Therefore, the court is barred from adjudicating Norris's § 1983 related to the parole

revocation at this time.

Accordingly, Defendants' <u>Motion to Dismiss</u> [Doc. No. 85] is GRANTED as to Counts

7, 16, 17, and 20.

     6.  Conspiracy Claim Against Russell, Lind, and Devlin

Count 8 alleges that Russell, Lind, and Devlin conspired to violate Norris's civil rights

under 42 U.S.C. §§ 1983 and 1985 due to racial animus and retaliatory motive. Defendants argue

that Norris has not pleaded a deprivation of a federally secured right, and that there are

insufficient factual allegations to suggest conspiracy. Mot. to Dismiss Mem. 31 [Doc. No. 86].

A civil rights conspiracy under § 1983 is "a combination of two or more persons acting in

concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal

element of which is an agreement between the parties to inflict a wrong against or injury upon

another, and an overt act that results in damages." <u>Estate of Bennett v. Wainwright</u>, 548 F.3d

155, 178 (1st Cir. 2008) (internal citation omitted). "In order to make out an actionable

conspiracy under section 1983, a plaintiff has to prove not only a conspiratorial agreement but

also an actual abridgment of some federally-secured right." <u>Nieves v. McSweeney</u>, 241 F.3d 46,

53 (1st Cir. 2001) (citations omitted). Section 1985 bars certain enumerated conspiracies. "To

state a claim under § 1985(3) a plaintiff must allege the existence of (1) a conspiracy, (2) a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, (3) an overt act in furtherance of the conspiracy, and (4) either (a) an injury to person or property, or (b) a deprivation of a constitutionally protected right or privilege." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

Norris has not sufficiently pleaded that Russell, Lind, and Devlin acted in concert. See Slotnick v. Staviskey, 560 F.2d 31, 33 (1st Cir. 1977) ("[C]omplaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts."). Norris's allegations of individual wrongdoing are not enough: Tortious conduct of two or more individuals acting alone without further evidence of an agreement is insufficient to establish a conspiracy. See Gutierrez v. Mass. Bay Transp. Auth., 437 Mass. 396, 415, 772 N.E.2d 552 (2002) ("The plaintiffs did not offer evidence that defendants agreed together to violate plaintiffs' civil rights.").

Norris's allegations "upon information and belief" that Defendants entered into an agreement are also insufficient to infer that they agreed on a concert of action. Norris alleges individual actions taken by Defendants that were allegedly pursued with the goal of revoking Norris's parole. But Norris does not offer anything beyond conclusory statements to indicate that the Defendants knowingly created and acted upon a concerted scheme to deprive Norris of his constitutional rights. See Diaz v. Devlin, 229 F. Supp. 3d 101, 111 (D. Mass. 2017) (dismissing a conspiracy claim where "the Complaint does not contain any allegations that would support an inference that there existed a concrete agreement between the officers involved in the investigation to inflict any injury on or violate the rights of Plaintiffs").

Accordingly, Defendants' Motion to Dismiss [Doc. No. 85] is GRANTED as to Count 8.

7.      Failure to Intervene Claims Against Lind, Russell, and O'Dell

In Count 12, Norris alleges that Lind failed to intervene when he took no action to stop the other officers from using unreasonable force during the April 14, 2021 arrest.[14] In Count 14, Norris alleges that Lind, Russell, and O'Dell failed to provide adequate medical attention during the arrest. Defendants argue that Lind was not in a position to prevent the use of force, and that Norris was provided adequate medical attention. Mot. to Dismiss Mem. 32 [Doc. No. 86]. Defendants also assert that these counts should be dismissed on qualified immunity grounds.

Under section 1983, "[a]n officer may be held liable not only for his personal use of excessive force, but also for his failure to intervene in appropriate circumstances to protect an arrestee from the excessive use of force by his fellow officers." Wilson v. Town of Mendon, 294 F.3d 1, 6 (1st Cir. 2002); accord Davis v. Rennie, 264 F.3d 86, 98 (1st Cir. 2001) ("An officer who is present at the scene and who fails to take reasonable steps to protect the victim of another officer's use of excessive force can be held liable under section 1983 for his nonfeasance."). To prevail on a section 1983 claim for failure to intervene, a plaintiff must show that "[a] non-participating defendant . . . 1) was present when excessive force was used, 2) observed the use of excessive force, 3) was in a position to realistically prevent that force and 4) had sufficient time to do so." Walker v. Jackson, 56 F. Supp. 3d 89, 96 (D. Mass. 2014) (citing Davis, 264 F.3d at 102).

Norris has sufficiently pleaded that Lind failed to intervene to prevent excessive force. See Am. Compl. ¶ 211 [Doc. No. 73] (alleging that Lind "trail[ed]" Norris on the way to the

---

[14] Norris brings count 12 against Lind under § 1983 and Mass. Gen. Laws c. 12 § 11I. See Sec. IV.A.3 (discussing elements for claims under the Massachusetts statute).

conference room," observed other officers punch and assault Norris, id. at ¶ 210, and was the senior-most officer on the scene, id. at ¶ 209). Further, given the facts alleged, Lind is not entitled to qualified immunity on a motion to dismiss. It is clearly established that an officer "has an affirmative duty to intercede on the behalf of a citizen whose constitutional rights are being violated in his presence by other officers" through the use of excessive force. Torres-Rivera v. O'Neill-Cancel, 406 F.3d 43, 54 (1st Cir. 2005) (denying qualified immunity to an officer for a failure to intervene to prevent excessive force); see Walker v. Jackson, 952 F. Supp. 2d 343, 352 (D. Mass. 2013) ("[I]t is well settled that an officer may be liable for another officer's excessive use of force.").[15]

However, Norris has failed to state a claim that Lind, Russell, and O'Dell did not provide medical attention during the arrest. Although Norris's original requests for medication were denied, id. at ¶ 88, Lind and O'Dell did look for Norris's medication, and when they could not find it, an ambulance was called and Norris was treated at the hospital, id. at ¶ 90-91.

Accordingly, Defendants' Motion to Dismiss [Doc. No. 85] is GRANTED as to Count 14 and DENIED as to Count 12.

8.      Search and Seizure Claims Against Russell and Devlin

In Count 18, Norris alleges that Russell and Devlin improperly seized his private communications, answered calls and texts on Norris's phone, and removed the phone from the parole office without a warrant, in violation of the Fourth Amendment and Article 14 of the Massachusetts Declaration of Rights. Defendants argue that Norris had limited privacy interests

---

[15] Cases cited by Defendants, see Mot. to Dismiss Mem. 42 [Doc. No. 86], are not to the contrary. In Walker, 952 F.Supp. 2d at 352, and Cosenza v. City of Worcester, Mass., 355 F. Supp. 3d 81, 101 (D. Mass. 2019), the claims were not about excessive force. And Cox. v. Hainey, 391 F.3d 25 (1st Cir. 2004) did not involve a failure to intervene claim at all.

as a parolee, and Norris had consented to a search of the phone by installing RemoteCom. Mot. to Dismiss Mem. 33 [Doc. No. 86]. Further, they argue that to the extent that Norris claims that the search contributed to a revocation of parole, those arguments are barred by the favorable termination requirements. Id. Norris responds that he does not have diminished privacy rights as to his communications with his doctors and lawyers, and he only agreed to monitoring of his browsing history, not his private communications. Opp. to Mot. to Dismiss 21 [Doc. No. 92].

Here, where Norris alleges that the unconstitutional search led to his parole revocation, the claim is barred by the favorable termination requirements under Heck. See Sec. IV.A.4 (discussion of favorable termination).[16]

Accordingly, Defendants' Motion to Dismiss [Doc. No. 85] is GRANTED as to Count 18.

9.      Computer Fraud and Abuse Act Claim Against Russell and Devlin

In Count 19, Norris alleges that Russell and Devlin gained unauthorized access to Norris's smartphone, seized his private information, answered his text messages and phone calls, accessed his banking information, and removed the phone from the parole office to a location near Devlin's home, causing him damages in violation of the CFAA, 18 U.S.C. § 1030. Am. Compl. ¶¶ 251-257 [Doc. No. 73]. Defendants argue that their access was authorized by Norris's accepted parole conditions, the accepted installation of RemoteCom, and the later warrant application. Mot. to Dismiss Mem. 35 [Doc. No. 86].[17]

---

[16] Where the court finds that Norris's Fourth Amendment claim is barred by Heck, the court does not address Defendants' alternative arguments for dismissal.

[17] Defendants also argue that they are entitled to qualified immunity for Norris's CFAA claim. Mot. to Dismiss Mem. 43-44 [Doc. No. 86]. While Defendants may be correct that the scope of "authorized access" was not clearly established at the time of the relevant events, Defendants have pointed to no cases that allow a court to apply qualified immunity to a CFAA claim.

The CFAA prohibits a person from obtaining information through the unauthorized access, or by exceeding authorized access, of a computer. "To 'exceed authorized access' is defined as 'to access a computer with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter.'" Guest-Tek Interactive Ent., Inc. v. Pullen, 665 F. Supp. 2d 42, 44 (D. Mass. 2009) (quoting 18 U.S.C. § 1030(e)(6)).

Here, Defendants were authorized to search Norris's phone as a term of his parole, which Norris acknowledges. Am. Compl. ¶¶ 28-30 [Doc. No. 73]. Further, Norris assented to the installation of RemoteCom to monitor his browsing history. Id. at ¶ 69. Accordingly, Norris cannot claim a CFAA violation based on the search of his phone.

Norris also alleges that his phone and text messages were answered and that the phone was removed from the probation office. Id. at ¶ 106. Defendants do not address how such actions fall within the scope of authorization. Instead, Defendants contend that Norris's allegations do not satisfy the $5,000 statutory damages requirement. Mot. to Dismiss Mem. 35 [Doc. No. 86].

The CFAA provides, in relevant part, that "[a]ny person who suffers damage or loss[18] by reason of a violation of [18 U.S.C. § 1030] may maintain a civil action against the violator to obtain compensatory damages and injunctive relief or other equitable relief." 18 U.S.C. § 1030(g). The amount of damage or loss must be at least $5,000. Turner v. Hubbard Systems, Inc., 855 F.3d 10, 12 (1st Cir. 2017). Here, Norris claims damage or loss of more than $5,000.

---

[18] The statute defines "damage" "any impairment to the integrity or availability of data, a program, a system, or information" and the term "loss" is defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. §§ 1030(e)(8), (11).

But only a portion of his alleged damages, namely, the $1,400 for hiring an independent expert, Am. Compl. ¶ 255 [Doc. No. 73], can be tied to a potential CFAA violation. The other costs (incurred due to a failure to timely register his car title and to provide certain documents to the Department of Unemployment Assistance, see id.) relate to the authorized seizure of Norris's phone—not the answered phone calls and texts, or the removal of the phone from the probation office.

Accordingly, Defendants' Motion to Dismiss [Doc. No. 85] is GRANTED as to Count 19.

> 10.     Intentional Infliction of Emotional Distress Claims Against Lind, Russell, and O'Dell

In Count 15, Norris alleges that Lind, Russell, and O'Dell knew or should have known that failing to intervene and using unreasonable force during arrest would cause emotional distress. In Count 21, Norris alleges that Russell, Lind, and Devlin intentionally inflicted emotional distress through their harassment, mistreatment, evidence fabrication, and arbitrary parole decisions. Defendants argue that Norris has not shown that the actions were beyond the bounds of decency. Mot. to Dismiss Mem. 36 [Doc. No. 86].

"In order to prevail on a claim of intentional infliction of emotional distress, a plaintiff must show that: '(1) the defendant intended to inflict emotional distress, or knew or should have known that emotional distress would likely result, (2) the defendant's conduct was extreme and outrageous to the extent that it was utterly intolerable in a civilized society, (3) the defendant's conduct caused the plaintiff's distress, and (4) the plaintiff sustained severe emotional distress.'" Mercurio v. Town of Sherborn, 287 F. Supp. 3d 109, 125 (D. Mass. 2017) (quoting Johnson v. Town of Nantucket, 550 F. Supp. 2d 179, 183 (D. Mass. 2008)). Defendants' conduct meets this bar if it is "so outrageous in character, and so extreme in degree, as to go beyond all possible

bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" Foley v. Polaroid Corp., 400 Mass. 82, 99, 508 N.E.2d 72 (1987).

Where Norris alleges that Russell "assaulted and hit [Norris] from behind," and pinned his arms above his shoulders, Am. Compl. ¶ 78-79 [Doc. No. 73], and that O'Dell punched Norris in the stomach, id. at ¶ 84, Norris has sufficiently pleaded extreme and outrageous conduct. Further, where Norris has sufficiently stated a claim against Lind for failure to intervene, see Sec. IV.B.6, he has also sufficiently stated a claim for intentional infliction of emotional distress as to incidents involving the arrest.

Norris has also sufficiently alleged that Russell, Lind, and Devlin intentionally inflicted emotional distress through their harassment, mistreatment, evidence fabrication, and arbitrary parole decisions. See Limone v. United States, 497 F. Supp. 2d 143, 227 (D. Mass. 2007) ("[p]erverting the system of justice the[] [officers] had sworn to uphold" sufficiently stated a claim for IIED); see also Bazinet v. Thorpe, 190 F. Supp. 3d 229, 240 (D. Mass. 2016) (allegations of fabricating evidence to obtain criminal charges against an individual suffering from mental illness sufficiently stated a claim for IIED).

Further, Defendants have not supported their position that qualified immunity is applicable to these claims with any relevant case law or argument. As such, Defendants are not entitled to qualified immunity for the state common-law tort claims.

Accordingly, Defendants' Motion to Dismiss [Doc. No. 85] is DENIED as to Counts 15 and 21.

### B. Claims Against Parole Board Supervisors Moroney, Keefe, Simons, and Gomez (Counts 22 and 23)

#### 1. Substitution of Defendant Moroney

Defendants request that Tina M. Hurley be substituted for Moroney on all official capacity claims because Moroney has recently left the Parole Board and Tina Hurley now serves as chair. Mot. to Dismiss Mem. 4, n. 8 [Doc. No. 86]. Under Federal Rule of Civil Procedure 25(d), when "a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending . . . . [t]he officer's successor is automatically substituted as a party." Fed. R. Civ. P. 25(d). Accordingly, Hurley is substituted for Moroney for all official capacity claims against the chairperson of the Parole Board.[19]

    2.    Failure To State a Claim

In Count 22, Norris alleges that the Defendants were deliberately indifferent to, and failed to protect Norris from, the harm he suffered while in custody; in Count 23, he alleges that Defendants failed to implement protective policies, and promoted unconstitutional policies for parolees. Defendants argue that Norris has not alleged any facts personally connecting any of them to the violations, or that they violated Norris's constitutional rights. Mot. to Dismiss Mem. 37 [Doc. No. 86].

As a general matter, a supervisor is not automatically liable under § 1983 for the misconduct of their supervisees. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000). However, "[p]ublic officials may be held liable under § 1983 for a constitutional violation only if a plaintiff can establish that his or her constitutional injury 'resulted from the direct acts or omissions of the official, or from indirect conduct that amounts to condonation or tacit authorization.'" Ocasio-Hernández v. Fortuno-Burset, 640 F.3d 1, 16 (1st Cir. 2011) (internal citation omitted). That is, "the plaintiff must show that one of the supervisor's subordinates

_____

[19] Norris brings claims against Moroney in both her official and individual capacities. He brings his claims against the remaining individual defendants in their individual capacities only.

abridged the plaintiff's constitutional rights," and that "the [supervisor]'s action or inaction was affirmative[ly] link[ed] to that behavior in the sense that it could be characterized as supervisory encouragement, condonation, or acquiescence or gross negligence amounting to deliberate indifference." <u>Guadalupe-Báez v. Pesquera</u>, 819 F.3d 509, 514-15 (1st Cir. 2016) (internal citation omitted).

Under a deliberate indifference theory of supervisory liability, "the plaintiff must show '(1) that the officials had knowledge of facts, from which (2) the official[s] can draw the inference (3) that a substantial risk of serious harm exists.'" <u>Parker v. Landry</u>, 935 F.3d 9, 15 (1st Cir. 2019) (internal quotation omitted). "[E]ven if the complaint contains facts plausibly showing deliberate indifference, the plaintiff must also allege facts giving rise to a causal nexus between the supervisor's acts or omissions and the subordinate's misconduct." <u>Id.</u> "In addition to deliberate indifference and causation, the plaintiff must allege facts showing that the supervisor was on notice of the subordinate's misconduct." <u>Id.</u> "[I]solated instances of unconstitutional activity ordinarily are insufficient to establish a supervisor's policy or custom, or otherwise to show deliberate indifference." <u>Maldonado-Denis v. Castillo-Rodriguez</u>, 23 F.3d 576, 582 (1st Cir. 1994).

Norris first alleges that Moroney, Keefe, Simons, and Gomez failed to protect Norris while in their care in violation of the Due Process Clause. Under the Due Process Clause and the Eighth Amendment, "when the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." <u>DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.</u>, 489 U.S. 189, 199-200 (1989). This affirmative duty to protect arises from the limitations on self-

protection while in custody. Id. at 200. However, it "does not transform every tort committed by a state actor into a constitutional violation." Id. at 202.

Norris has not sufficiently alleged that Moroney, Keefe, Simons, and Gomez were deliberately indifferent to Norris's requests for assistance. Defendants were put on notice of Norris's claims of mistreatment in October 2020 when he filed a grievance against Devlin and Russell, see Am. Compl. ¶¶ 53-54 [Doc. No. 73], and "complained…about the pattern of mistreatment…and his fears of retaliation and harm" to Keefe, id. at ¶ 56-57. However, after the reports, Keefe and Gomez led an investigation into Norris's allegations. Id. at ¶¶ 53-55. Although Norris alleges that investigation was "inept and ingenuine," id., Norris has not sufficiently stated that Keefe and Gomez failed to comply with investigatory procedures for parolee grievances, or that Defendants were required to interview specific individuals.[20]

Similarly, Norris has not sufficiently alleged that Defendants were deliberately indifferent to the foreseeable consequences of "the implementation, creation and enforcement of Board policy, practices, and procedure." Am. Compl. ¶ 273 [Doc. No. 73]. See Maldonado-Denis, 23 F.3d at 582 (supervisor is "liable for the foreseeable consequences of such conduct if he would have known of it but for his deliberate indifference or willful blindness, and if he had the power and authority to alleviate it").

Although Norris cites external studies regarding racial discrimination in the parole and revocation processes, see Am. Compl. ¶¶ 128-148 [Doc. No. 73], Norris has not sufficiently alleged that his complaints of misconduct gave rise to "a pattern . . . so striking as to allow an

---

[20] At the June 7, 2023 hearing, Norris stated that he also wrote to Moroney in December 2020, but received no response. However, where Norris did not allege any such communication in his Amended Complaint [Doc. No. 72], any such allegation is not properly before the court.

inference of supervisory encouragement, condonation, or even acquiescence" by Defendants to put them on notice of foreseeably violative policies, particularly where Defendants investigated the complaints and found no violation. See Voutour v. Vitale, 761 F.2d 812, 820 (1st Cir. 1985); see also Ramirez-Lluveras v. Rivera-Merced, 759 F.3d 10, 20 (1st Cir. 2014) (supervisors must be on notice of "widespread" abuse). Norris does not demonstrate any reason to avoid the deliberate indifference standard where Norris does not appear to bring a facial challenge to the policies governing parole. And to the extent that Norris alleges that he was harmed as a result of the policies, Norris has not sufficiently pleaded that Defendants were deliberately indifferent.

Accordingly, Defendants' Motion to Dismiss [Doc. No. 85] is GRANTED as to Counts 22 and 23.[21]

### C.   Claims against the Massachusetts Parole Board (Counts 24 and 25)

In Counts 24 and 25, respectively, Norris brings a negligence claim, and a claim for racial discrimination under Title VI of the Civil Rights Act, 42 U.S.C. § 2000D, against the Parole Board. Defendants argue that these claims are barred by sovereign immunity. Mot. to Dismiss Mem. 16 [Doc. No. 86]. Norris responds that the Parole Board waived its sovereign immunity by accepting federal funding. Opp. to Mot. to Dismiss 4 [Doc. No. 92]; see Am. Compl. ¶ 10 [Doc. No. 73] (alleging that the Parole Board receives federal funding and assistance).

The Eleventh Amendment generally bars suits against the State,[22] including its departments and agencies, unless the State has waived its immunity or Congress has explicitly overridden it. United States v. Mitchell, 445 U.S. 535, 538 (1980).

---

[21] Where the court finds that Counts 22 and 23 are subject to dismissal, the court does not address Defendants' immunity arguments.

[22] The Massachusetts Parole Board is an agency of the state. Bartlett v. Massachusetts Parole Bd., 2013 WL 3766747, at *3 (D. Mass. July 15, 2013).

Norris's negligence claim against the Parole Board is subject to dismissal without prejudice based on sovereign immunity. "By enacting the Massachusetts Tort Claims Act, the Commonwealth has not waived its Eleventh Amendment immunity to suit in federal court." Caisse v. DuBois, 346 F.3d 213, 218 (1st Cir. 2003). Any such claim must therefore be brought in state court.

The Supreme Court has interpreted Section 601 of Title VI of the Civil Rights Act of 1964 to create a private right of action for intentional discrimination claims seeking injunctive relief and damages. Alexander v. Sandoval, 532 U.S. 275, 279-80 (2001). Although the parties dispute whether the Parole Board is entitled to immunity under Title VI, the larger issue remains that Norris has not sufficiently alleged that he was subject to intentional discrimination on the basis of race. See Sec. IV.A.2, supra.

Accordingly, Defendants' Motion to Dismiss [Doc. No. 85] is GRANTED as to Counts 24 and 25.

### D.  Declaratory Judgment (Count 26)

To the extent that Norris seeks a declaration that the Parole Board discriminated against him or violated CFAA, such relief is barred where Norris only seeks relief for past harms. See Mills v. State of Maine, 118 F.3d 37, 55 (1st Cir. 1997) ("[D]eclaratory judgment is unavailable where . . . there is no ongoing legal violation."). And to the extent Norris seeks injunctive relief against Moroney and the Parole Board to remedy policies, the claim is moot where the court finds that Norris has not stated a claim against Moroney or the Parole Board.

Defendants Motion to Dismiss [Doc. No. 85] is GRANTED as to Count 26.

### E.  Leave to Amend

Norris also requests that if the court is inclined to grant Defendants' motion, that he be granted leave to amend his complaint. See Opp. to Mot. to Dismiss 1 [Doc. No. 91]. Federal Rule of Civil Procedure 15(a)(1) allows a party to amend its pleadings "once as a matter of course" within certain time restraints. Norris has already amended his complaint once. Here, Norris has provided no basis for an additional amendment and has not included a proposed amended complaint with his request.

Accordingly, the court finds no cause to allow a further amendment, and Norris's request for leave to amend is DENIED.

**V.     Conclusion**

For the foregoing reasons, Defendants' Motion to Dismiss [Doc. No. 85] is GRANTED as to Counts 2-8, 11, 14, 16-20, and 22-26 and is otherwise DENIED. Norris's request for leave to amend, see Opposition to Motion to Dismiss [Doc. No. 91], Motion for Court Order [Doc. No. 105], and Revised Motion for Judgment on the Pleadings [Doc. No. 109] are DENIED.

IT IS SO ORDERED

August 17, 2023                                    /s/       Indira Talwani
                                                   United States District Judge